The City of St. Louis vs. Russell.

THE CITY OF ST. LOUIS vs. WM. RUSSELL.

1. The Legislature has power to alter or abolish any public municipal corporation.

2. It is not necessary that each member of such corporation should assent to an alteration of its charter: it is sufficient if a majority assent.

3. In making such alteration, however, the Legislature cannot disregard vested rights of individuals or corporations.

4. The act of 1841, altering the charter and extending the limits of the city of St. Louis, being accepted by a majority of the citizens of St. Louis, although such extension were against the consent of those included in the city limits by the extension, is constitutional.

5. Corporations have only such powers as are specially given by their charter, or are necessary to carry into effect some specified power.

6. Although the provision in the charter of 1841, which gives to the city of St. Louis power "*to levy and collect taxes upon all persons and property* made taxable by law for State purposes," may give room to doubt the power of the city to sell land for the non-payment of taxes, yet the 8th section of 6th art. of the charter recognizes the power, and leaves no room to doubt. It provides, "That the mayor and city council shall have power by ordinance to direct the manner in which any property, real or personal, advertised for sale, or sold for taxes by authority of the corporation, may be redeemed."

The City of St. Louis vs. Russell.

APPEAL from St. Louis Circuit Court.

C. D. DRAKE, for Appellant.

POINTS AND AUTHORITIES.

1. The legislative power vested by the Constitution in the General Assembly is *absolute* over all matters of domestic government, unless restrained by provisions contained in the State or National constitution.

2. The State Constitution imposes no restriction upon the power of the General Assembly in this respect. 1 Tucker's Commentaries, 162–3–4.

3. The incorporation of cities being a legislative grant of political power, creating a civil institution to be employed in the administration of the government, is a matter in which the legislature may act, according to its own judgment, unrestrained by any limitation of its power, imposed by the Constitution of the United States. Dartmouth College vs. Woodward, 4th Wheaton, 518; Terrill & others vs. Taylor and others, 9 Cranch 52; 1st Tucker's Commentaries, 162–3–4.

4. The acceptance, by the people of St. Louis, of the charter of 1822, by which the town was erected into a city, was not in any sense, a contract between the State and the people of St. Louis; or, if a contract, the power to repeal, alter, amend, or modify it at pleasure, was expressly reserved in the last section of the act. 1 Territorial Laws, 973; 1 Tucker's Com. 164.

5. The limits of the city of St. Louis, as established by the charter of 1822, did not, by the popular acceptance of the charter, become permanent and unalterable, but were subject to be changed by the legislature at pleasure.

6. The consent of inhabitants residing out of the city limits, was not at all necessary to the extension of the limits so as to bring them within the city. The legislature was fully authorized to make the extension, with or without such consent, and against opposition from any quarter.

7. The act of 1831, supplementary to the charter of 1822, in which provision was made for the extension of the city limits over adjacent territory, when *requested* by the inhabitants of such territory, and consented to by the people of the city, was merely permissive of the extension, without the necessity of the action of the legislature, and did not establish a principle or contract that such extension should take place in no other way. 2 Territorial Laws, 244.

8. The extension of the city limits by the act of 1841, was a legiti-

mate exercise of the legislative power, not violative of the State or National Constitution.

9. The land of the complainant brought into the city, by the extension of the limits in 1841, was the subject of taxation by the city, notwithstanding he did not consent, but was opposed to the extension.

10. The 17th sec. of article 7, of the charter of 1841, restricting the rate of taxation upon the property lying outside of the former limits, to one-sixteenth of one per cent., *until the city should pave certain streets*, presents no bar to the collection of the tax assessed in 1842, upon complainant's property, even though it be true that the streets were not paved, because it does not appear in the bill that the tax exceeded one-sixteenth of one per cent. on the value of complainant's property.

11. The city had power to sell complainant's land for the taxes assessed upon it.

H. S. GEYER, for Appellee.

The complainant, now appellee, insists, that the demurrer of the appellant to the bill was properly overruled, on the following grounds:

1st. That although the first act of incorporation, as well as succeeding acts, reserved a power to alter, amend, or repeal, such reservation does not authorize the legislature to bring within, and subject to the debts and power of the corporation, any persons or property not included by the first act, without the consent of such persons.

2d. The provisions of the act of 15th January, 1831, and the 3d sec. of the act of 8th February, 1839, in relation to the extension of the boundaries, were not subject to repeal or alteration, without the assent of those whose property was to be affected by such change.

3d. The act of the 15th January, 1831, re-enacted in the act of Feb· 1839, amounted to a contract by which the faith of the State was pledged, as well to those without as to those within the city, that no lands should be annexed to the city in any manner, other than that prescribed by those acts; which act the legislature could not constitutionally alter or change.

4th. The city, as it existed prior to 1841, was a distinct person in law, from whose debts the complainant was exempt, and the attempt to subject the person and property of the complainant to such debts, is contrary to the constitution.

The City of St. Louis vs. Russell.

5th. The complainant could not lawfully be made a member of an existing corporation, without his consent, so as to subject his property to the debts and powers of such corporation.

6th. Independent of every other consideration, the corporation of the city of St. Louis has not power to sell, or authorize the sale of real estate for taxes, and for that reason, the demurrer was properly overruled. Ellis vs. Marshall, 2 Mass. R. 269.

7th. The legislature can only exercise such powers, as have been delegated to it, and when it transcends these limits, its acts are utterly void. Taylor vs. Porter & Ford, 4th Hill, 140.

8th. Statutes which violate the plan and obvious principles of common right and common reason, are null and void. Ham vs. Claws, 1 Bay, 98.

9th. A statute incorporating certain persons for purposes of private advantage or emolument, does not bind any person named therein, unless he consent thereto. Ellis vs. Marshall, 2 Mass. Rep. 269; 4th Peters, 167.

10th. A corporation has no power, except what is given by its incorporating act, either expressly, or as incidental to its existence. Head vs. Providence Ins. Co., 2 Cranch, 127 ; 4 Wheaton, 636 ; 4 Peters, 152; Goszler vs. Corporation of Georgetown, 6 Wheaton, 597.

11th. A power to purchase, survey and locate land, to make partition thereof, and levy taxes thereon, to defray the expenses thereof, and all other necessary expenses, did not authorize the corporation to tax the land, for the purpose of paying State taxes thereon. Beaty vs. Knowler, 4 Pet. 152.

12th. A corporation cannot exercise the power of creating forfeitures, unless it be expressly granted. Collier vs. Doty, 6 Ham. 395.

13th. When a tax has been legally assessed, by a corporation clothed with competent powers, the proportion which each individual is bound to pay, becomes a debt which may be recovered at the suit of the corporation. But unless it is expressly authorized by the charter, summary proceedings by distress, warrant and sale, though directed by a by-law, is no justification, in an action brought against the officer executing the process, by the person whose goods are seized. Berger vs. Clarkson, 1 Halsted, 352.

Napton, J. delivered the opinion of the court.

Russell filed his bill in the circuit court of St. Louis county, praying

an injunction to restrain the city from selling his land for city taxes. The facts upon which he based his right to enjoin, are stated to be these: Russell purchased a tract of land lying adjoining the city of St. Louis about the year 1828, of which he then took possession, and has occupied and cultivated as a farm ever since. In 1822 the charter of St. Louis defined the boundaries of the city, and those boundaries continued unchanged until 1839, when another charter was obtained from the legislature, by which the southern boundary of the city was slightly altered. By this act, it was also provided, that if the proprietors of land adjoining St. Louis, laid off their land into lots, it might be made a part of the city upon petition of two-thirds of the owners, and with the assent of the inhabitants. The charter of 1841, enlarged the limits of the city, so as to take in several farms and gardens adjoining the city, and this law was passed, as the complainant alledges, against the remonstrances of the owners of these lots, and amongst others of the complainant Russell. This charter, so far as the boundary of the city is concerned, was re-enacted in 1843, and by color of these two acts, the city authorities proceeded to levy taxes on Russell's land, and to sell the same for the non-payment thereof. These proceedings the complainant considers not warranted by the charter, or if they are so warranted, not sanctioned by the constitution of this State or of the United States.

This case was transferred to the court of common pleas, where a demurrer was filed; and the case having been re-transferred to the circuit court, that court overruled the demurrer, and made the injunction perpetual.

The only questions arising here, are, first, as to the power of the legislature to enlarge the limits of the city of St. Louis, against the will of the inhabitants brought into the city by such extension; and second, the power of the city corporation, under its charter, to sell lands for the non-payment of city taxes.

The right of a State legislature, to change, modify, enlarge, or restrain the charter of a public municipal corporation, established for public purposes, has been conceded in all the adjudicated cases, both of the Federal and State Courts, to which we have been referred. Terrill vs. Taylor, 9 Cranch, 52; Dartmouth College vs. Woodward, 4th Wheaton; 2 Kent's Com. 206; 1st Tucker Com. 162. That this power may not be exercised in such a mode as to infringe any right of private property, is equally well established. In the Dartmouth College case, a case of much celebrity on this branch of Constitutional law, the court declared that "if the act of incorporation be a grant of political power,

if it create a civil institution to be employed in the administration of government, or if the funds of the college be public property, or if the State, as a government, be alone interested in its transactions, the subject is one in which the legislature may act according to its own judgment, unrestrained by any limitation of its power imposed by the Constitution of the United States."

It seems to be a settled principle in the English Courts, that the acceptance of the charter is essential to create a body corporate, and that the government cannot compel persons to become coporators without their assent, or at least without the assent of a majority, though this assent is generally inferred from the acts of the incorporation. 4 Burr. 2200 ; 3 Term Rep. 240. This doctrine is no doubt equally applicable in this county in all cases of *private* corporations. A man may refuse a grant, whether from the government or an individual ; he may decline to improve his property, and the legislature cannot compel him, however much, in their estimation, he may have mistaken his own interests. Ellis vs. Marshall, 2 Mass. Rep. 276. But this doctrine cannot be applicable to public municipal corporations, except in the modified form to which we have alluded. The assent of every individual corporator cannot be necessary to the creation or alteration of a city charter ; the assent of the majority alone puts in operation this "government within a government," and its future action under the charter raises the presumption that all have acquiesced.

If the legislature had the power to annul the charter of St. Louis, *in toto*, a power which is conceded in most of the acts of incorparation, and which existed independent of any such concession, upon what principle can they be denied the power of alteration. The power to destroy of necessity includes the power to alter or effect a partial destruction, as much so as the whole is greater than a part. The legislature then had the power to repeal the charter of 1839, *in toto ;* and if the charter of 1841, had embraced the entire county of St. Louis, and been accepted and acted on by the majority of the corporators, such an act would not be an infringement upon the Constitution of this State or of the United States.

It is not to be understood that in the exercise of this power to alter, amend or abolish city and town charters of incorporation, the legislature may disregard the vested rights either of individuals or corporations, which are protected by the principles of every free government, and by our State and Federal Constitutions in particular.

The complaint of Russell is, that his land has been embraced within the limits of the corporation of St. Louis, against his consent. This

consent is not, we think, necessary to authorize the legislature to exercise its power in creating, enlarging, or restraining public municipal corporations. If other rights of Russell have been infringed; if his private property has been taken for the public use, without just compensation being made; or if his land has been subjected to pay the debts of another, whether that other person be a natural or artificial one, without his consent, either express or implied, he is certainly not without remedy. Such infringements of private right, are provided against by our written constitution, as well as condemned by the fundamental principles of every republican government, and it would be neither respectful to the legislature, or the corporation which they have created, to suppose that any such wanton violations of right would be attempted.

The question remaining to be considered, is the right of the city of St. Louis to sell lands for the non-payment of the taxes thereon. On this point we assume it to be the settled doctrine, that corporations have only such powers as are specifically given by charter, or are necessary to carry into effect some specified power. The exercise of a corporate franchise, being restrictive of individual right, must be within the letter and spirit of the act of incorporation. The power to impose a tax on real estate, and to sell it where there is a failure to pay the tax, is a high prerogative, and should never be exercised where the right is doubtful. (Beaty vs. Knowler, 4 Peters, 152.)

The charter of 1841, gives to the city council of St. Louis power "to levy and collect taxes, not exceeding one half of one per centum, upon *all persons and property* made taxable by law for State purposes." If this section of the act were alone on this subject, there might be room for contending that the sale of land was not the only or the necessary mode by which the tax could be collected, and therefore the power of sale would not arise by implication, from the granted power "to levy and collect." But we regard the 8th section of the 6th article of the charter, as a legislative interpretation of this power "to levy and collect taxes." That section provides that the mayor and city council shall have power by ordinance, to direct the manner in which any property, real or personal, advertised for sale, or sold for taxes by authority of the corporation, may be redeemed. This is a clear and distinct recognition of the power in the city to sell land for the non-payment of taxes, and is sufficient to remove any doubts, which the general phraseology of the previous article might create.

The judgment of the St. Louis circuit court will, therefore, be reversed, and this court doth order and adjudge, that the injunction granted by said court be dissolved, and the bill of complainant dismissed.