BANK OF THE STATE OF MISSOURI vs. MERCHANTS' BANK OF BALTIMORE.

1. When objections to the reading of depositions are made in the inferior Court, but the grounds of objection not specified, the objections will not be looked into in the Supreme Court.

2 A violation of its charter by a bank, cannot be taken advantage of collaterally, or incidentally, but must be brought up on a proceeding instituted for that purpose against the corporation.

3. A contract between the bank of Missouri and the Merchants' bank of Baltimore, to collect the debts of the latter in depreciated bank paper, even if admitted to be illegal and in violation of the charter of the former, will not render her liable to pay in specie the amount collected under such contract.

### APPEAL from St. Louis Court of Common Pleas.

POLK *for Appellant.*

To reverse the judgment of the St. Louis Court of Common Pleas, the plaintiff in error relies on the following points:

1. That the depositions of Danl. Sprigg, Thos. D. Johnston, and John B. Morris, offered in evidence by the defendant in error, ought to have been excluded by the Court of Common Pleas on the motion of plaintiff in error to that effect.

The record shows no notice of the taking—no commission—no authentication—and none of the exigencies in which alone, by our statute, the deposition of a witness may be read in evidence. See Code of 1835, p. 221, §2, 3, 4, 5, 6, 15, 16, and 19.

2. That the copy of the charter of the Merchants' bank of Baltimore, and of the act of the legislature of Maryland in regard to damages on protested bills of exchange, ought also to have been excluded from the jury, because not authenticated according to law. Code of 1835, p. 250, §283; 1 Story's Laws 93, and 2 do. 947.

3. The Court of Common Pleas improperly excluded certain portions of the testimony of the witness Shurlds, which portions are *underscored* in the bill of exceptions, and thus designated.

4. The Court below erred in excluding from the jury the circular letters offered in evidence by the defendant, especially the first one of those letters. It bore date long before the date of the draft given in evidence by the plaintiff. It was written by defendant's authorized and acting cashier, to the authorized and acting cashier of the plaintiff. It related to and fixed the terms of the very dealing out of which this suit originated. It stated the terms upon which defendant would collect for plaintiff, and was meant to condition and limit the dealings and liabilities of the parties. It was relevant and pertinent, and no objection was or could be made for any informality or technicality.

If incompetent, therefore, it must have been so only because it contained the terms of a contract which the defendant had no right, by the laws of the land, to make. But I deny, for the reasons already stated on the 3d point, and for those which will hereafter be stated on the 5th point, that the laws of the land prohibited the contract whose terms are set forth in that letter.

5. I maintain that the Court below erred in the instructions it gave to the jury, and that its judgment ought to be reversed for that reason. Session acts of 1837, p. 17, and following sections 18, 19, 26 and 35; 3 Wend. 94; 12 John. R. 231; 7 Cranch 306. It held substantially, that the defendant's charter prohibited her from dealing in depreciated funds; that the course of dealing given in evidence was violative of her charter, and that, consequently, she became responsible in specie for the whole amount of currency she had collected for plaintiff, and was not authorized to tender in payment of checks drawn on her for the amount of such collections, the same kind of currency or funds she had received in making such collections, although said funds were received by virtue of an express understanding to that effect between the parties.

6. The Court of Common Pleas erred in refusing to give the instructions prayed by defendant's counsel, excepting the 2d, which submits to the determination of the jury a question, which is at least, in part, if not entirely, a question of law. Code of 1835, p. 98, §8, title Bills of Exchange; Riggs vs. the city of St. Louis, 7 Mo. R. 438.

7. The Court below ought to have set aside the verdict and granted the defendant a new trial. Not only because of the errors of law already enumerated, but because the jury found against the evidence.

### SPALDING & TIFFANY *for the Appellee.*

#### POINTS AND AUTHORITIES.

1. The objections to the reading of depositions of plaintiff were properly overruled. 3 Howard's Rep., (United States,) Camden vs. Doremus, Suydams & Nixon; 8 Mo. Rep. 128, Fields vs. Hunter.

2. The objection to the reading of the act of Assembly of Maryland, certified from the office of the Court of appeals, was properly overruled, as being too general, and as having no foundation even if sufficiently specified.

3. The Court below did not err in excluding the three circulars of the bank of the State of Missouri.

4. The instruction given below for plaintiff was right, there having been no special agreement shown as to the kind of funds in which the collection was to be made; and public policy not permitting the bank to give such notice of collecting in depreciated paper, and then discharging itself from liability for specie or its equivolent; and there being no proof whatever that tender was made

in the funds actually receveid on the claims sent by the plaintiff, but may have been made in paper much more depreciated than that received on said claims. 11 Wheat. 258; Chitty on Contracts,. as to consideration against public policy, or illegal or immoral, page 657; 3 Dessans 132; 11 John. 23; 16 Serg. & Rawle 147. Although Courts will not aid parties to recover on transactions arising from illegal agreements, yet where illegal transactions have taken place, an agent who has received money on the part of his principal, will not be permitted to shelter himself from payment of it to his principal on ground of illegality of consideration of original transaction.* Rev. Code of 1835, p. 95; Acts of 1836-7, p. 24, and Acts of 1842-3, p. 20.

5. No exception was taken to the exclusion of certain oral testimony.

6. The 1st, 2d, and 5th instructions of defendant raised the same questions as the plaintiff's instructions. The 3d instruction of defendant is of no applicability to the case. The 4th is wrong as nobody contends that the recovery is by the laws of Maryland. The 6th instruction about John Smith has nothing to do with the case.

NAPTON, J., *delivered the opinion of the Court.*

The Merchants' bank of Baltimore brought an action of assumpsit in the Circuit Court of St. Louis, against the bank of the State of Missouri. The special counts of the declaration averred, in substance, that on the 6th of July, 1839, the bank of Missouri was indebted to the bank of Balmore in the sum of $20,000, for so much money theretofore collected, and being so indebted, on said 6th day of July promised said Merchants' bank to pay her drafts or checks not exceeding such indebtedness; and that on said day and year the said Merchants' bank of Baltimore drew a draft on said bank of Missouri, at St. Louis, for $14,580, in favor of one Charles Goodwin, to whom the same was delivered; which said draft, on the 19th July, 1839, was presented for payment at the banking house of defendant and protested for non-payment; that by means thereof the said Merchants' bank became liable to pay, to the holder of the draft, said sum of $14,580 00, together with cost of protest, interest and damages, according to the laws of the State of Maryland; and that by these laws the holder of the draft was entitled to recover of the Merchants' bank damages on the draft at the rate of eight per cent. upon the principal sum thereof; that on the 3d of August, 1839, the Merchants' bank paid to the holder of the draft $15,735 10, being the amount of principal and damages thereon, interest, &c., of all of which the bank of Missouri had notice, by means of which, &c. &c.

The pleas were non-assumpsit, set off, and payment. The case was transferred to the Court of Common Pleas, where it was tried, and the plaintiff had a verdict for $1,604 76, and judgment accordingly. Motions in arrest of judgment, and for a new trial, were made, but over-

It appeared in evidence on the trial that the Merchants' bank had drawn a check upon the bank of Missouri, on the 6th July, 1839, for $14,580, in favor of Chas. Goodwin, which was presented for payment on the 19th July, and protested for non-payment. It appeared also that the Merchants' bank subsequently paid the amount, with interest, costs of protest, &c. It appeared also, that the bank of Missouri offered to pay the check in depreciated bank paper, but that payment was demanded in specie; and further, that the check was subsequently paid in *currency,* so that the matter in dispute in this case was merely the difference between the face of the check and the actual specie value of the currency paid out, which was alledged and proved to be about ten per cent. below par, and the damages, &c.

The bill of exceptions states that objections were made to the introduction of several depositions, read on behalf of plaintiff, but that these objections were overruled, and the defendant excepted.

It was proved by some of the depositions, to which exceptions of this character were taken, that there was in Baltimore, in July, 1838, a convention of delegates from certain banks, by which the 13th day of August, 1838, was fixed upon as the time for resuming specie payments. This convention was attended by John Smith, the then President of the bank of Missouri.

Copies of the charter of the Merchants' bank, and of the act of the legislature of Maryland, fixing the damages recoverable on protested bills of exchange, were also given in evidence by the plaintiff. The authentication of these acts was objected to. The copy is certified by the clerk of the Court of Appeals for the western shore of Maryland, to be a true one, and to be extracted from "Liber, &c.," being one of the law records of the State of Maryland, belonging to the office of the Court of Appeals for the western shore of said State. To this certificate is affixed the seal of the Court. The chief judge of the Court of Appeals certifies that the foregoing attestation is in due form and by the proper officer. Then follows the certificate of the governor, certifying to the character of the chief judge, under the great seal.

The cashier of defendant testified that the bank of Missouri, when this check was presented for payment, dealt in currency, that is, notes of Indiana, Illinois, and Kentucky banks; that the checks of the Merchants' bank, upon the defendant, had been heretofore paid in that way; that the understanding was that the defendant should collect the demands or claims sent for collection by plaintiff, in currency; and that plaintiff was to receive the same kind of funds that might be taken by the defendant,

in payment of the plaintiff's claims. This testimony, tending to show an agreement between plaintiff and defendant as to the kind of funds which the defendant was to receive on the plaintiff's claims, was excluded by the Court. This witness also stated, that the first suspension of specie payments took place in May, 1837, and the first resumption was on 13th August, 1838; that the second suspension was in October, 1839, and the second resumption in 1840.

The defendant offered in evidence three letters, which it was admitted had been written by defendant's cashier, and sent to plaintiff. These letters were excluded by the Court. The first bears date May 30, 1837; the second, Oct. 25, 1839; and the third, March 13, 1841. They are all couched in the same language, being to the following effect:—

BANK OF THE STATE OF MISSOURI,<br>
St. Louis, May 30th, 1837.

*D. Sprigg, Esq., Cashier Merchants' bank of Baltimore:*

*Sir.*—This bank will receive in payment of debts, notes of those banks of the eastern cities that are considered of good standing, and notes of the Pittsburg, Wheeling, Cincinnati, Louisville, and New Orleans banks, and of the State banks of Illinois and Indiana.

Collections will, therefore, only be made for those banks or individuals whose checks or drafts may be paid with any or all the notes thus received in payment; or with the drafts or checks of this bank, on such points as it may be convenient to draw, at such rates of exchange as may be considered proper. Subject, however, to such changes as may, from time to time, be deemed expedient. We will charge you one-half per cent. within, and one per cent. without the State of Missouri, for collection. Should you think proper to entrust your collections to this bank, under the suggestions above, they will be cheerfully attended to.

Very respectfully, yours,      H. SHURLDS, Cashier.

The Court instructed the jury as follows: "If the jury believe from the evidence that the defendant was indebted to the plaintiff on the 19th July, 1839; that a draft for the amount of that indebtedness drawn by a duly authorized officer of the plaintiff, was presented on that day for payment by the proper holder thereof; that payment was then and there refused by the defendant unless the holder would receive funds not equivalent to specie; that said draft was therefore protested and plaintiff duly notified thereof; that by reason of such notice and protest, and by force of the laws of Maryland, in which State said Merchants' bank is situated, said plaintiff became bound to pay, and did pay the holder of said draft certain damages, costs and interest, upon said draft, the jury

will find for the plaintiff the amount of such payment with interest from the date thereof."

In explanation of the foregoing instruction, the Court stated "that the bank of the State of Missouri had no power under its charter to deal in depreciated funds, and that the Court hold, that the course of dealing which had been given in evidence, as a defence to this action, was a violation of that charter."

The first question presented by the record, is the objection growing out of the refusal of the Court to exclude certain depositions to which objections were made at the trial. The objections taken here to these depositions are not based upon any incompetency or irrelevancy of the testimony contained in them, but solely relate to the form of their authentication, and the absence of all proof that either of the exigencies have occurred which by our statute alone authorizes their admission. It might be made a question, whether this Court would consent to reverse a judgment upon this ground, unless it was shewn affirmatively, by the plaintiff in error, that no rule of Court existed requiring objections of this character to be made previous to the trial. But it is sufficient to say, that no specific objections were made to the depositions, and it is impossible for this Court, from the record, to conjecture that the objections now taken are the same which were presented to the Court which tried the case. It is in conformity to the previous practice of this Court not to look into such objections. Dickey and others vs. Malechi, 6 Mo. R. 186; Frost vs. Pryor, 7 Mo. R. 316; Field vs. Hunter, 8 Mo. R. 131; 19 Wend. 550; Camden vs. Doremus, Suydan & Nixon, 3 Howard R.

The objection to the manner in which the statutes of Maryland were authenticated, was a specific one, and it has therefore been examined. It is quite apparent that these statutes have not been authenticated in any of the modes pointed out by the act of congress of May 26th, 1790. The act of congress provides that the laws of the several States shall be authenticated by having the seal of their respective States affixed thereto. Under this statute it has been held that the attestation of a public officer is not necessary to authenticate a copy of an act of the legislature, but the seal of the State affixed, by an officer having the custody thereof, to a copy of the law, will be conclusive evidence of the existence of such law, and no other proof is necessary, and in the absence of all proof to the contrary, it will be presumed that the seal was annexed by an officer having competent authority to do the act. U. States vs. Amedy, 11 Whea. R. 392. In the present case, the great seal of Maryland is not affixed to the law, but to a certificate of the governor that James

Buchanan is the chief judge of the Court of Appeals of that State. There is no room for presuming that the great seal was designed to authenticate the law, for any such presumption is repelled by the certificate.

Nor is this law authenticated according to the mode provided by the act of congress for authenticating records and office books, kept in a public office, not appertaining to a Court. The certificate of the presiding judge in such case is required to be authenticated by the certificate of the clerk; here it is authenticated by the certificate of the governor.

It is argued, however, that this authentication is good at the common law. In relation to that, the rule is, that the best testimony, which the nature of the thing admits of, shall be required, and therefore the sanction of an oath is necessary, unless the copy be verified by some such high authority that the law respects it not less than the oath of an individual. An authentication under the great seal of the State, affixed by the keeper thereof, would, we apprehend, be good at common law. These laws are not, however, as we have seen, authenticated in this mode, nor are they sworn copies; and the only other mode known to the common law would be an authentication by the certificate of an officer authorized by law, which certificate must itself be properly authenticated. We are not prepared to say that these laws have not been so authenticated as to come within the requisitions of the common law. A difficulty, however, presents itself in regarding the authentication valid as a common law authentication, from the fact that the certificate is made by the clerk of a Court;—an officer who would not *prima facie* be thought likely to be the keeper of the statute rolls of a State. Is not this objection fully answered by the judge's certificate, who certifies to the character of the clerk, and that his attestation is in due form and by the proper officer? We incline to believe the attestation sufficient, but as the case will be remanded upon other grounds, the question is not likely to become important in this case; the statutes of Maryland may be authenticated, at the next trial, in the simple and easy mode pointed out by the act of congress.

The main question in the case grows out of the opinions expressed by the judge who presided at the trial, that the bank of Missouri had no power under its charter to deal in depreciated paper, and therefore that the course of dealing between the plaintiff and defendant was a violation of that charter. This opinion seems to have occasioned the exclusion of Shurlds' testimony and the circular letters, the tendency or object of which was to establish a contract or understanding between the parties

which the Court, it is presumed, considered an illegal one. No other ground has been suggested upon which the exclusion of the circular letters could be placed, except that their purpose was to show an illegal contract—a contract either against public policy or violatory of the bank charter of the defendant.

We do not propose to examine the question which has been made upon the construction of the charter of the bank of Missouri. That question may become an important one, should a case arise in which its decision would be proper. Whether the bank of Missouri has violated its charter in making a contract with the Merchants' bank of Baltimore, to collect the debts of the latter in depreciated paper, is not a question which can arise in the present suit. A violation of the charter of the bank cannot be taken advantage of collaterally or incidentally, but must be brought up and enforced by a direct proceeding instituted for that purpose against the corporation. 2 Kent Com. 261; Angel & Ames on Cor. 664. It is true, that the Court would not imply a contract which would be in violation of the charter of the bank, where no express contract was proved; but the object of the testimony of Shurlds, and the introduction of the circular letters, was to show an express understanding between plaintiff and defendant. And so the Court of Common Pleas seems to have understood the character and scope of the testimony; for the instruction of the Court was, "that the course of dealing, which had been given in evidence as a defence, was a violation of the charter of the bank of Missouri." Whether this understanding or agreement was satisfactorily shown, or can be hereafter satisfactorily shown, is another question, and a question not to be determined by this Court. If the contract or course of dealing which the testimony in the case conduced to show, was violatory of the charter, will that fact convert the paper money which was collected by the defendant for the use, and at the special instance of the plaintiff, into specie? Will the Court make a new contract for the parties, because the one they have made for themselves is not a legal one? Shall we not rather apply the maxim *ex turpi contractu non oritur actio?* If the contract of the bank of Missouri with the bank of Maryland, to collect the dues of the latter in suspended bank paper, made through the agency of the officers, was not a contract warranted or authorized by the charter of the former bank, it was not a binding contract on the bank of Missouri. But surely this does not make her responsible for the amount collected by her, under such an arrangement, in specie. Upon what principle is such a responsibility based, or from what source is it drawn? It is not because such was the agreement and understanding of the par-

ties, for the hypothesis is, that the agreement and understanding was that the notes of suspended banks might be collected, and that payments were to be made only in such notes. It cannot be that the law will imply such a contract, when an express contract of a different character is proved; that the contract is to be regarded as a legal one, so far as it is a contract to collect the debts of the plaintiff, but so far as it is a contract to pay over to the plaintiff the same species of money received by defendant in payment of these debts, it is to be considered illegal, and a legal contract substituted in its place. Such a construction, it strikes us, would be exceedingly inequitable, to say the least of it. It would be a partial recission of an agreement, and a substitution of a new agreement in lieu of so much of the old one as is thought to be illegal.

In regard to so much of the testimony as related to the bank convention in Philadelphia, and its proceedings, in which the president of the bank of Missouri participated, we are unable to see that it had any bearing upon the case.

Judge SCOTT concurring, the judgment of the Court of Common Pleas is reversed, and the cause remanded.