THE MOUNT VERNON BANK, Appellant, v. JOHN D. PORTER *et al.*, Respondents.

Kansas City Court of Appeals, January 2, 1893.

1. **Banks and Banking**: CASHIER ESTOPPED: PROFITS: EVIDENCE. Where the cashier of a bank transacts business officially for the bank and at its instigation, he is estopped from denying his agency, and the profit on such transaction belongs to the bank and not to the cashier, and in an action to recover such profits the whole transaction is admissible in evidence.

2. ———: ———: ULTRA VIRES: NEGOTIATION OF BONDS. If it were *ultra vires* for the bank to negotiate water bonds, such transaction is not *malum in se*, can only be taken advantage of by the state, and the cashier through whom the contract was made cannot set it up to retain for himself the profits of the transaction.

3. ———: CASHIER'S TIME: CORPORATE BUSINESS. If the contract was with the bank and the business was for the bank, in order for it to recover the profits of the cashier, it would not seem necessary to show he was to devote his whole attention to the bank and do no other business.

4. **Principal and Surety**: CASHIER'S EMPLOYMENT: EVIDENCE. The sureties of a cashier ought not to be held for an act of his not done for the bank as cashier, but the terms and conditions of his employment may be shown though they are not set out in the books of the directory.

5. **Banks and Banking**: POWER TO NEGOTIATE BONDS: PRINCIPAL AND SURETY. Under the statutory charter of Missouri state banks, they are authorized to handle negotiable bonds and can sell or place them for their customers, and the sureties of a cashier would be liable for his misappropriation of the profits of such transaction.

*Appeal from the Dade Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED.

THE following is the section of the statutes of 1865 concerning the powers of savings banks: Chapter 68, section 1. "Any five or more persons in any county in this state may organize themselves into a savings association, and shall be permitted to carry on the business of receiving money on deposit and to allow interest thereon, giving to the person depositing credit therefor, and of buying and selling exchange, gold, silver, coin bullion, uncurrent money, bonds of the United States, of the state of Missouri, and of the city and county in which any association shall be organized; of loaning money on real-estate and personal security, at a rate of interest not to exceed ten per cent. per annum, and of discounting negotiable notes, and notes not negotiable; and on all loans made may keep and receive the interest in advance." And the following is that of 1889: Chapter 42, section 2745. "Every such corporation shall be authorized and empowered to conduct the business of receiving money on deposit and allowing interest thereon, and of buying and selling exchange, gold, silver, coin of all kinds, uncurrent money, of loaning money upon real estate or personal property, and upon collateral and personal securities, at a rate of interest not exceeding that allowed by law, and also of buying, selling and discounting negotiable and non-negotiable paper of all kinds, as well as all

kinds of commercial paper; and, for all loans and discounts made, such corporation may receive and retain in advance the interest thereon."

*Norman Gibbs* and *Henry Brumback*, for appellant.

(1) "Where profits are made in the ordinary course of the business of the agency, it must be presumed that the parties intended that the principal should have the benefit thereof." Story on Agency [7 Ed.] secs. 207, 211, 214; 1 Parsons on Contracts [5 Ed.] p. 86, *et seq.* "Where one is actively or constructively the agent of another, all profits made by him in the business of the agency, beyond his ordinary compensation therein, belong to the employer." *Murdoch v. Milner*, 84 Mo. 96; *Ehrlich v. Ins. Co.*, 88 Mo. 256; *Bent v. Priest*, 86 Mo. 482; *Dutten v. Willner*, 52 N. Y. 318, 319; *Bain v. Brown*, 56 N. Y. 285. (2) The negotiation of these bonds was within the scope of the legitimate powers of the bank, and not, as contended by respondents and held by the circuit court, *ultra vires*. Revised Statutes, sec. 2745, p. 700. This language seems broad enough to give the needful authority, and must be decisive, unless modified by other provisions.

*Mann & Talbutt* for respondents.

(1) The court properly refused to admit parol evidence as to the contract between the appellant bank and John D. Porter, the cashier. When respondents were solicited to become surety for Porter as cashier, they would naturally look to the record of his appointment and the recitals in their bond, and they cannot be held by implication beyond these recitals. *Blair v. Ins. Co.*, 10 Mo. 560–564; *Nolley v. Callaway Co.*, 11 Mo. 460–463; *State v. Sandusky*, 46 Mo. 377; *State v. Kingsley*,

44 Mo. 262; *Miller v. Stewart*, 9 Wheat. 702. (2) Respondents bound themselves for the honest and faithful performance by Porter of his duties "as cashier." The law of the land regulating his duties is a part of their contract. It is not a part of his duties as cashier of the bank to negotiate the sale of water bonds in controversy, and the court properly rejected all evidence offered in relation to said transaction. *Blair v. Ins. Co.*, 10 Mo. 560; *Nolley v. Callaway Co.*, 11 Mo. 463; *City of St. Louis v. Sickles*, 52 Mo. 126; *Wright v. Russell*, 2 Black. 934; Story on Contracts, 353; *Bank v. Chickering*, 4 Pick. 414; *Orrick v. Vahey*, 49 Mo. 428. (3) It is not among the ordinary duties of a cashier to act as an agent or "promoter" or broker for the sale of bonds on commission for other parties. *Winsor v. Bank*, 18 Mo. App. 665; Morse on Banks & Banking, 152. That this transaction is outside the scope of his duties as cashier has been flatly decided. *United States v. Bank*, 21 How. 360; *Winsor v. Bank*, 18 Mo. App. 673.

ELLISON, J.—Plaintiff is a banking corporation, organized under the laws of Missouri. Defendant, John D. Porter, was plaintiff's cashier in the year 1888, and the other defendants are his bondsmen as such cashier. In the year 1888, as plaintiff alleges and offered to prove, Porter as such cashier, or the bank through Porter, as cashier, negotiated $25,000 of bonds, known as the Pierce City waterworks bonds, for which there was a commission of $1,000 due the bank; that this sum was paid to Porter, cashier, but he refused to account to the bank for the money. At the trial plaintiff offered to prove the foregoing and much more in the line of showing that, whatever agency Porter exercised in transacting the business, it was in his official capacity; that that portion of the negotiation

which emanated from him was in his capacity as a representative of the bank, and that all that portion of the negotiation from the purchasers of the bonds (or their agents) was addressed to him in his official capacity, and that his expenses in the negotiation were paid by the bank; that the bank had rendered financial assistance to the builders of the waterworks company, with the understanding that such company would place their bonds with them to sell or negotiate, and that the company did so place the bonds with them. All of the above was excluded by the trial court, whereupon the plaintiff took a nonsuit with leave to set it aside. Failing in which it appeals.

Our opinion is that all the foregoing testimony should have been admitted. It seems to have been excluded on the ground that it was outside of defendant's duties as cashier. But, without answering yea or nay to this position for the present, we will say, that he did it for the bank officially and at the bank's instigation. He ought now to be estopped from denying his agency. Herman on Estoppel, sec. 1090. In short the bank did it through him, and it does not now lie in his mouth to say it was beyond his duties. If the matters offered to be proved are believed to be true defendant is unquestionably liable. The money belongs to the bank, and he must account for it. If he does not he must answer.

The trial court, as seems to be indicated in the briefs, perhaps excluded the testimony also upon the ground that the act of the bank in negotiating the bonds was *ultra vires*. But this cannot be allowed to be set up by the defendant cashier. The contract of the bank (through its officer) to sell the bonds was not *malum in se*, and, if it be conceded that it overstepped its chartered powers in so doing, it was a transgression for which it is answerable to the state alone. This ques-

tion we fully considered in the case of *Welch v. Brewing Co.*, 47 Mo. App. 608, 618. The transaction was not *malum in se*, and the contract between the bank and the owners of the bonds has been fully executed, and we can discover no reason why the doctrine of *ultra vires* should shield defendant. 2 Morse on Banks & Banking, secs. 731, 734, 750.

If the matters above referred to are shown to be facts, we hardly see the necessity of plaintiff proving that it was understood that defendant should devote his whole attention to the affairs of the bank, and do no other business. But of course we cannot say what phase may be put upon the case by defendant's testimony as none was heard. We will add this, that if the evidence offered by plaintiff should on retrial be relevant to the case as it may disclose itself by the pleadings and evidence, it would be admissible as against the defendant cashier, though perhaps not against the sureties, as they ought not to be held under their bond for any act of defendant not done for the bank, or in his capacity as cashier. We are not willing to say that because the terms and conditions of defendant's employment as cashier were not set out in the books of the bank directory that such terms cannot be shown.

Coming now to consider the relation of the surety defendants to this case we need not decide whether the sureties on a banking officer's bond are liable for those acts he may do for the bank, by its direction, which acts are *ultra vires*. Since, in our opinion, the proof offered here, showing the arrangement made by the bank when it gave the financial assistance and agreed to negotiate the bonds, was within the proper powers of the bank. Especially is this true under the broad terms of the charter of such institutions in this state. Revised Statutes, 1889, sec. 2745. It must be understood that the ordinary terms, to become a bank, or do

a banking business, are not as comprehensive as our statutory charter. The charter does not stop at stating that a certain number of persons may establish "a bank of deposit and discount," as is sometimes the case; and in which case it would become important to inquire into the rights and powers inherent in such business. But here, since we have a statutory charter authorizing banking corporations, we must look to the statute for the powers of the bank. "Corporations created by statute must depend, both for their powers and the mode of exercising them, upon the true construction of the statute itself." *Bank v. Dandridge*, 12 Wheat. 68. Our statute, by the section aforesaid, not only authorizes such institutions to loan money and receive it on deposit; to buy and sell, exchange and coin; to negotiate and discount negotiable and non-negotiable paper; but it gives authority to *buy and sell* such paper, " *as well as all kinds of commercial paper.*" Now this we think was sufficient authority for the bank to make the arrangement it is said to have made concerning the sale of the waterworks bonds. The bank itself could have bought them outright; and I can see no reason why a sale or placing of them for its customers is not covered by the breadth of the statute referred to. A town warrant is held to be a species of commercial paper which a bank may buy (*Aull Savings Bank v. City of Lexington*, 74 Mo. 104), and so is a county warrant (*International Bank v. Franklin Co.*, 65 Mo. 105), and this under a statute narrower than its present reading. Corporate bonds have of recent years grown to become a large part of our commercial securities, and I am satisfied that by the provision of the statute our state banks are authorized to handle them. Section 1, page 365, Revised Statutes, 1865, authorized the purchase and sale of bonds of the United States, the state of Missouri, and of the city or county in which the banks

were organized, and to discount only negotiable and non-negotiable notes. Under the present statute, as before stated, such limitations are omitted, and the broad terms above noted are inserted.

A wrong theory has governed the trial of the cause. It has been placed with a class of cases to which it does not belong. The judgment is reversed and the cause remanded. All concur.