CITY OF GOODLAND, Appellant, v. BANK OF
DARLINGTON, Respondent.

Kansas City Court of Appeals, April 4, 1898.

| 74 | 365 |
| 77 | 432 |

| 74 | 365 |
| 93 | ²196 |
| 93 | ²198 |

| 74 | 365 |
| 98 | ²661 |

1. **Corporations:** BANKING INSTITUTIONS: CHARTER CONSTRUED. Grants to corporations are confined to such powers as are clearly comprehended within the words of the act, or derived therefrom by necessary implication; and doubts must be resolved in favor of the public.

2. ————: ————: ULTRA VIRES: EXECUTED CONTRACT. The defense of *ultra vires* is not open to a bank against a liability in subscribing to the stock of another bank when the contract has been fully executed by the other bank and is not *malum in se* or *malum prohibitum*.

*Appeal from the Gentry Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

REVERSED AND REMANDED.

STEBBINS & EVANS and T. M. HUMPHREY for plaintiff in error.

(1) The statutes of the state of Missouri authorizing the incorporation of banks, by fair implication, authorize a banking corporation to invest its funds in the stock of other corporations. R. S. 1889, sec. 2751. (2) A corporation is estopped from pleading *ultra vires* as a defense to a contract from which it has received benefit. 5 Thompson's Commentaries on Corporations, sec. 6016. (3) A corporation is estopped from pleading the defense of *ultra vires* to a contract where such contract has been executed by the other party, or where the other party has acted to his disadvantage. 5 Thompson's Commentaries on Corporations, secs. 6017 and 6025. Cook on Stock and Stockholders [3 Ed.], p. 974; Wright v. Pipe Line Co., 101 Pa. St.

204; Ins. Co. v. McClelland, 9 Col. 111; Town Co. v. Morris, 43 Kan. 282; Drug Co. v. Robinson, 81 Mo. 19; Dewey v. R. R., 91 Mich. 351; Corning v. McCullough, 1 N. Y. 47; Article in American Law Review for May and June, 1894, entitled "Doctrine of Ultra Vires in relation to Private Corporations," by Seymour D. Thompson. (4) The question whether a corporate act is *ultra vires* can only be raised by the state. Drug Co. v. Robinson, 81 Mo. 19; Hoveleman v. R. R., 79 Mo. 632; Bank v. Matthews, 98 U. S. 620.

SALLEE & GOODMAN and T. A. CUMMINS for defendant in error.

(1) We say that the said article 7 is the measure of the rights, privileges, and liabilities of the respondent bank; that, like all other private corporations, it has just such powers as are conferred by its charter, with such other incidental powers as are necessary to render available and operative those expressly granted. But nowhere, either expressly or by implication, is power granted by said article 7 to a banking corporation organized under it to become a stockholder in another corporation, much less in a corporation deriving its powers and authority from and having its liabilities imposed and its limitations defined by the constitution and laws of another state. McCormick v. Bank, 165 U. S. 550; Pearce v. R. R., 21 How. (U. S.) 441; R. R. v. Bridge Co., 131 U. S. 371; Transp. Co. v. Car Co., 139 U. S. 24; 5 Thompson on Corp., sec. 5980. (2) One corporation can not become a stockholder in another unless expressly empowered to do so by its governing statute. It can not subscribe for shares of stock in another corporation. 1 Thompson, Corp., sec. 1102; Berry v. Yates, 24 Barb. 199;

Zabriskie v. R. R., 23 How. (U. S.) 381; Franklin v. Lewiston Inst., 68 Me. 43; Bank v. Bank, 36 Ohio St. 350; People v. Trust, 8 L. R. A. 497; R. R. v. Iron Co., 1 L. R. A. 412; People v. Trust Co., 130 Ill. 268; Cook on Stockholders [2 Ed.], secs. 63, 613; Pearson v. Concord R. Corp., 13 Am. St. Rep. 590. (3)   It would be a contradiction of terms to assert that there was a total want of power by any act to assume the liability, and yet to say that by a particular act the liability resulted.    The transaction being absolutely void could not be confirmed or ratified. Bank v. Kennedy, 169 U. S.—October term, 1896.    A contract made by a corporation beyond the scope of its powers, expressed or implied, on a proper construction of its charter, can not be enforced or rendered enforcible by the application of the doctrine of estoppel.   R. R. v. R. R., 163 U. S. 564; In re Comstock, 3 Saw. 218; Nav. Co. v. Dandridge, 8 Gill & J. 248; Bank v. Duncan, 54 Ala. 471; Hitchcock v. Galveston, 96 U. S. 341.

SMITH, P. J.—The allegations of the plaintiff's petition are as follows:

"1.   That the plaintiff is a municipal corporation organized under the statutes of the state of Kansas,

PETITION.

and the defendant is a savings bank organized under the statutes of this state. 2.   That the Sherman County Bank is and has been since 1889 a banking corporation organized under the statutes of the state of Kansas, having its chief place of business in the city of Goodland, county of Sherman, and state of Kansas.   3. That the said Sherman County Bank on the ninth day of March, 1896, became insolvent, and thereupon receivers therefor were appointed by the district court of the said county of Sherman.   4.   That on the fourteenth day of July,

1896, the plaintiff recovered judgment against the said Sherman County Bank in the district court of the said Sherman county, the same being a court of general jurisdiction, for the sum of two thousand, six hundred and seventy-eight dollars and forty cents, and that thereafter execution was issued on said judgment according to law, directed to the sheriff of said Sherman county, which was afterward returned wholly unsatisfied because no property could be found whereon to levy the same. 5. That the defendant bank is and was at all times mentioned in plaintiff's petition a stockholder in the said Sherman County Bank, owning and holding ten shares of stock therein of the total par value of one thousand dollars. 6. That the constitution of the state of Kansas provides that dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and that the statutes of that state provide in substance that when a creditor has recovered judgment against a corporation and an execution issued thereon has been returned unsatisfied such creditor may bring a direct action against any stockholder to enforce such stockholder's additional liability. The construction placed upon said statutes by the courts of the state of Kansas was likewise alleged.''

To this petition the defendant demurred on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was by the court sustained and judgment entered thereon accordingly, and from which plaintiff has appealed.

The plaintiff contends that under the provisions of sections 2751 and 2752 of article 7 of chapter 42, Revised Statutes, that the banking corporations therein referred to are by fair implication authorized to invest their funds in the stock of other corporations. It will

be observed that the latter of the above CORPORATIONS: banking institu- cited sections gives the form of the state- tions: charter construed. ment which the former requires the di- rectors of such banking corporations to furnish the secretary of state, and in which is contained, under the head of "resources" the words, "other bonds and stocks at their present cash market price." It is a matter of common knowledge of which we may take notice, that banks of deposit or discount or of both deposit and discount organized under the statute of this state in the course of their regular business often take as collateral security for loans made by them the stocks of other corporations the absolute title of which they are frequently compelled to acquire in order to protect themselves; and in this way their funds become invested in such stocks. The statute has been made sufficiently comprehensive in its terms to enable such banks, in making their official statements, to include such stocks among their resources. But we do not understand that this or any other statute authorizes any banking corporation organized under the statute of this state to subscribe for the stock of any other corporation or to primarily invest its funds therein. In this state the well settled rule of construction of grants by the legislature to corporations, whether public or private, is that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act or derived therefrom by necessary implication, regard being had to the object of the grant. St. Louis v. Russell, 9 Mo. 507; Blair v. Ins. Co., 10 Mo. 560; Ruggles v. Collier, 43 Mo. 353; Carroll v. Campbell, 108 Mo. 550; State ex rel. v. Murphy, 130 Mo. 10. And any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of

the public.    State ex rel. **v.** Murphy, *supra;* Carroll v. Campbell, *supra.*

In Reese on Ultra Vires, section 8, it is stated: "In all cases of legislative grants to private corporations the well established rule of construction is this: That grants to private corporations shall be construed strictly against the grantees; and to prevail they must be clear and beyond a doubt; a doubt defeats the power.    What is not granted by clear and unequivocal language is withheld.    The object is to protect the public against imprudent grants and grants made by implication without clear intentions."    In another section—10—the same author further states that the rule of construction just quoted "is peculiarly applicable to articles of association framed under general laws which are a substitute for a legislative charter and which assume and define the powers of the corporation without any supervision of the legislature or of any public authority."    One of the clearest and most concise statements of this rule was made by Mr. Justice Miller in Thomas v. R'y, 101 U. S. 71, which is to the effect: "The powers of corporations organized under legislative statutes are such and such only as those statutes confer.    Conceding the rule applicable to all statutes that what is fairly implied is as much granted as what is expressed.    It remains that the charter of a corporation is the measure of its powers and that the enumeration of these powers implies the exclusion of all others." In R'y v. Collins, 40 Ga. 582, it was said:    "A corporation is a mere creation of the law and only exists at all for the purposes declared in its charter and has absolutely no powers but those which the law confers upon it.    It is the creature of the law and in the very nature of things is just what the law makes it, no more, no less; and by the word "law" here I do not mean the general law which regulates powers of

persons but the act of incorporation, the charter, the constitution.''

Applying these rules of construction to section 2745, defining the rights and powers of the banking corporations authorized by other sections of said article 7, chapter 42, Revised Statutes, and it will be seen that neither this section nor the two sections previously herein referred to expressly or by implication authorized the defendant to subscribe for or purchase as an investment the said shares of stock in the defunct bank. As we understand the allegations of the petition the defendant was a stockholder in said defunct bank from its organization, and therefore a subscriber for the shares of stock held by it, or if not it was at least an early investor therein. We must therefore rule this construction against the plaintiff. From the allegations of the petition it is not quite clear whether the defendant was a subscriber for the shares of stock held by it in the defunct bank or whether it acquired the same by purchase and assignment; but whether the defendant was an original subscriber for the stock or subsequently acquired the same we think the rights and liabilities of the parties to this suit are the same in either case.

The question remains to be determined whether or not the defendant can escape the statutory liability of a stockholder in the defunct bank on account of the *ultra vires* in the acquisition of its stock therein. The transaction by which the defendant purchased its stock in the defunct bank, in so far as the same may be viewed as a contract between the two banks, was completely executed when the certificates were issued and delivered by the latter to the former. The defunct bank was presumably paid $1,000 by the defendant, in consideration of which the certificates of shares of stock in

——: ——: ultra
vires: executed
contract.

the former to an equal amount were issued to the latter. The transaction or contract between the two banks was executed to its fullest extent and especially so was this true as to the defunct bank. As soon as the defendant acquired the stock' the statute made it liable under certain conditions therein specified for an additional amount equal to the par value of such stock. This liability, under the constitution of Kansas, became a security to which creditors of the defunct corporation had a right to resort to satisfy their demands.

No case has been found whose facts are entirely similar to those of the present one, but there are cases, to which we shall presently refer, to which this bears a sufficient resemblance to justify the application here of the principles upon which they were decided. In section 6016 of Judge Thompson's Commentaries on the Law of Corporation, it is stated: "The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers and has received the fruits or benefits of the contract, and an action is brought against it to enforce the obligation on its part it is estopped from setting up the defense that it had no power to make it." It is stated in sections 650, 653 and 658 of Morawetz on Corporations: "That it does not follow that, because the exercise of corporate powers is prohibited by the common law, any corporate acts performed in violation of this prohibition will not be recognized as corporate acts. * * * Inasmuch as the prohibition of the common law against the unauthorized exercise of corporate power is based on grounds of public policy alone, it seems but reasonable that the effect of this prohibition upon the legal validity of corporate acts should be determined by the requirements of public policy * * * and after a contract made by a corporation in excess of its char-

tered powers has been wholly performed by either party
\* \* \* it can be said to be in the interest of public
policy to deny the innocent party relief," etc. It is quite
well settled in this state at least that the defense of
*ultra vires* is not open to a corporation when the con-
tract has been fully executed on the part of the other
contracting party, and is not expressly prohibited by
law. Grohmann v. Brown, 68 Mo. App. 630; Win-
scott v. Investment Co., 63 Mo. App. 367; Dairy Co.
v. Mooney, 41 Mo. App. 665; Welsh v. Brewing Co.,
47 Mo. App. 608; Glass v. Brewing Co., 47 Mo. App.
641; Drug v. Robinson, 81 Mo. 18. In Lysaght v.
Association, 55 Mo. App. 538, loc. cit., it was said:
"The law is that for acts merely in excess of charter
authority corporations can not set up the defense of
*ultra vires*, when the consideration has been received
and the transaction executed by the other party." In
Northampton County's Appeal, 6 Casey, 305, it was
said: "A man who enjoyed a privilege has no right
to say that because he ought not to have enjoyed it he
will not pay for it. However unlawful the act it would
be unsound policy to give him this immunity."

Insurance Co. v. McClelland, 9 Col. 11, was a
suit on an insurance policy. The insurance company
was authorized by its charter to insure property against
loss by fire. It had, in excess of its charter power,
insured the crops of the plaintiff against loss by hail.
It had received the premium consideration for the risk.
The property of the insured was damaged by hail. The
plaintiff recovered in the trial court and the supreme
court, in affirming the judgment, amongst other things
said: "It is argued on behalf of the appellant that
the courts ought in all cases to sustain the defense of
*ultra vires*, here interposed, on the ground of public
policy; that the public which confers the corporate
powers in such companies has an interest in the

protection of the innocent stockholders and creditors
of such companies by confining the exercise of their cor-
porate powers within their authorized limits, and this
is given in the books as the chief reason for the rule of
decision in cases which sustain the defense of *ultra
vires*.   That the public has an interest is quite true,
but whether to afford such protection the defense of
*ultra vires* is always necessary in such cases is another
thing.   Stockholders are but one portion of the public;
another portion, with equal rights of protection, is that
with whom these multiform corporations deal in the
daily exercise of their assumed powers.   It seems illog-
ical to assume that the interest of the public would be
best subserved by a public policy that will allow a cor-
poration, any more than an individual, to violate the
principles of common honesty and claim exemption
from the obligations of its contracts by pleading its
own wrong doing.   Besides, both the state which
grants these corporate powers, and the stockholders
for whose benefit such powers are exercised, have their
remedies, the former by interfering to revoke the
charter, and the latter by an action to restrain the un-
authorized undertakings.   While courts are inclined
to maintain with vigor the limitations of corporate
actions, whenever it is a question of restraining the
corporation in advance from passing beyond the bound-
aries of their charters, they are equally inclined, on the
other hand, to enforce against them contracts, though
*ultra vires*, of which they have received the benefit.
*   *   *

"The plea of *ultra vires* is not to be understood as
an absolute and peremptory defense in all cases of
excess of power without regard to other circumstances
and conditions.   *   *   *   Where a certain act is pro-
hibited by statute, its performance is to be held void
because such is the legislative will.   So where the

consideration of a contract is by law illegal, as where the cause of action arises *ex turpe*. But where the act is not wrong *per se*, where the contract is for a lawful purpose in itself, as in the present case, and has been entered into with good faith, and fairly executed by the party who seeks to enforce it, we must assent to the doctrine of those authorities which hold that the excess of the corporate powers of the contracting party which has received the benefit of the contract is an unconscionable defense, which may not be set up to exempt from liability the party so pleading it.'' And to the same effect are Town Co. v. Morris, 43. Kan. 282; Durham v. Mining Co., 22 Kan. 169; Association v. Martin, 39 Kan. 750; Kennedy v. Bank, 7 Neb. 59; White v. Bank, 39 Mass. 181; Allegheny City v. McClurkam, 14 Pa. St. 81; Dewey v. R'y, 91 Mich. 351; Arms Co. v. Barlow, 63 N. Y. 69.

Where a corporation is forbidden to invest its funds in the stock of another corporation yet does so and gives its note for part of the purchase price of the stock it has been ruled that in a suit on the note the defense of *ultra vires* will not be permitted. Dewey v. R'y, 91 Mich. 351, and numerous cases there collated. In Bank v. North, 4 Johns. Ch. (N. Y.) 370, the bank was a Pennsylvania corporation and had taken a mortgage upon real estate in New York. A bill of foreclosure was filed in the latter state. The defense was that by the act of incorporation the plaintiffs were not authorized to take a mortgage except to secure a debt previously contracted 'in the course of its dealing, and here the money was lent after the bond and mortgage were executed. The analogy of this defense to that here is quite obvious. Both cases present the same question. Chancellor Kent said:

"Perhaps it would be sufficient for this case that the plaintiffs are a duly incorporated body with

authority to contract and take mortgages and judgments, and if they should pass the exact line of their power it would rather belong to the government of Pennsylvania to exact a forfeiture of their charter, than for this court in this collateral way to decide a question of misuser by setting aside a just and *bona fide* contract." And this statement of the law was approvingly quoted by the supreme court of the United States in Bank v. Matthews, 98 U. S. 621.

And it has been repeatedly decided by the appellate courts of this state that a violation of a charter can not be taken advantage of collaterally or incidentally but only on a direct proceeding instituted for that purpose. Bank v. Bank, 10 Mo. 123; Ragan v. McElroy, 98 Mo. 349; Bank v. Porter, 52 Mo. App. 244; Society v. Branch, 120 Mo. 226; Bank v. Hunt, 7 Mo. App. 42. It has been further declared by the same courts that in a collateral proceeding to declare the *ultra vires* acts of a trading corporation void it must be shown to be the intention of the charter, as gathered from its terms, not only to restrict the business of the corporation to certain things, but *in addition to declare that when it exceeds these restrictions the act should be void*. If such intention does not exist in the charter, the state alone can question such acts as *ultra vires*, except when the contract is against public policy or good morals. Drug Co. v. Robinson, 81 Mo. 18; Ins. Co. v. Smith, 117 Mo. 261; Welsh v. Brewing Co., 47 Mo. App. 608; Glass v. Brewing Co., 47 Mo. App. 639. The contract under which the defendant became the owner of the stock in the defunct bank was in no sense *malum in se* or *malum prohibitum*, but it was unauthorized by its statutory charter. Now since it was fully executed by the defunct bank there is no rule of public policy to which our attention has been called that forbids the plaintiff, a creditor of the latter bank,

from enforcing the statutory addit io nal liability of the former by an action of this kind.   It is made clear by the authorities to which we have adverted that in cases like the present, where a corporation has entered into a contract which was in excess of its charter authority, and that that contract has been executed by the other contracting party, that an enlightened public policy requires that such contract be enforced rather than evaded.

And while the defunct corporation is not suing on the contract yet the plaintiff who is to some extent in privity with it, is suing under authority of the statute law of Kansas authorized to enforce a liability of defendant which resulted from the contract by which it acquired the stock in the former.   The case would not be different in principle if the defunct bank instead of a creditor were authorized by the statute to enforce the defendant's additional liability.   The question is at last whether the contract by which defendant acquired the stock is void under the circumstances alleged in the petition.   The defendant was a stockholder in the defunct corporation during the several years of its business existence, and presumably received and enjoyed all the benefits and advantages resulting therefrom.   And after this, and after the plaintiff had dealt with the bank on the faith of the security afforded by defendant's statutory additional liability as a stockholder we are unwilling to countenance the defense made by it of *ultra vires*, for to do so would be to countenance a wrong and injustice.

We are aware that it has been decided by the supreme court of the United States, and by the highest courts of some of the states, that a contract beyond the scope of the powers conferred on a corporation can not, by any partial performance, become the foundation of any right.   Thomas v. R'y, 101 U. S.

71; Transp. Co. v. Pullman, 139 U. S. 24; Oregon Rail & Nav. Co. v. R'y, 130 U. S. 1; R. R. v. R. R., 118 U. S. 290; R'y v. Bridge Co., 131 U. S. 371; Compress v. Planter's Press, 70 Miss. 669; Marble v. Harvey, 92 Tenn. 115; Trust Co. v. Miller, 33 N. J. 155. A careful examination of those cases has not had the effect to commend to our approving judgment the doctrine they assert.

Judge Seymour D. Thompson, in an able article published in the June number, 1894, of American Law Review, entitled, "The Doctrine of Ultra Vires in Relation to Private Corporations," referring to the federal decisions just cited, declares that they are "opposed to the public policy of justice." "Why," says he, "could not the court have said, for the sake of justice in those cases, that although contracts have been made in excess of the powers of one of the artificial contracting parties and opposed to the theory of public policy, yet if the public are in any way injured by the contract it is for the state creating the corporation to proceed against it by indictment or information in the nature of *quo warranto*, or in some other mode sanctioned by law. What right had the court in the case of the Oregon railway lease to assume that the people of the state of Oregon had been hurt, so long as they took no action against either corporation through their political authorities? To what extent could the court rightfully assume that the public policy of the state of Pennsylvania had been wounded by making a contract whereby a corporation created under the laws of Illinois was to pay over to the citizens of Pennsylvania the annual sum of $264,000? Why, in such cases, should a court of the United States be so astute and zealous in enforcing the supposed policy of a state which takes no action thereto in its own behalf?  *  *  *  The highest public policy

is concerned in requiring men to keep their contracts when they are not immoral and substantially, not theoretically, opposed to the public interest; and that public policy is wounded in the deepest sense when courts of justice educate men in the breaking of their just obligations on theoretical, speculative and fanciful grounds." The commentary of the learned writer in the foregoing paragraph we think fair and just. Apart from any inclination of our own we do not think we should follow these cases, for the reason that the doctrine they announce stands opposed to that of the cases hereinbefore cited by us from our own reports. In no view of the case which we are able to take do we think that the *ultra vires* of the transaction, by which the defendant acquired its stock in the defunct bank, can be invoked as a defense against the plaintiff's right of action.

It results that the petition states a good cause of action, and therefore the judgment of the circuit court will be reversed and the cause remanded. All concur.