THE SHERMAN CENTER TOWN COMPANY V. C. P. RUS-
SELL.

1. CASES, *Followed.* The cases of *Town Co. v. Swigart,* 43 Kas. 292, and
   *Town Co. v. Morris,* 43 id. 282, followed.

2. TOWN COMPANY — *Contract Not Ultra Vires.* A contract entered into
   by a town company incorporated "for the purchasing of lands, the
   surveying and platting of town-sites and selling town lots and other
   lands," in which it was agreed that, if R. would remove a bank, a
   barn and a restaurant located elsewhere to the town-site, the town
   company would convey to him certain lots in the town and pay him
   the sum of $1,000, tends directly to enhance the value of the remain-
   ing property of the corporation, and is not necessarily *ultra vires.*

*Error from Sherman District Court.*

THE opinion states the nature of the action and the mate-
rial facts. Judgment for plaintiff, *Russell,* on May 21, 1888,
for $1,000, with interest at 7 per cent. from November 23,
1886. The defendant *Company* brings the case here.

*Hardy & Sterling,* for plaintiff in error.

*J. W. Lewis,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The Sherman Center Town Company en-
tered into a contract with C. P. Russell, in which it was
agreed that if Russell would remove his bank, barn and res-
taurant from Voltaire, and establish them at Sherman Center,
the company would convey to him certain lots in the town of
Sherman Center, and pay the sum of $1,000. There were
other details included in the contract that it is unnecessary to
mention. Russell brought an action against the company,
alleging that he had fully performed the contract on his part,
but that the company had failed to pay him the consideration
named, and he asked for judgment for $1,000. The com-
pany alleges and contends that the contract was not authorized
by the board of directors, and that it had no authority under

its charter to make the same. The main contentions of the company before this court are, that the contract was *ultra vires,* and entered into without the authority of the directors of the company. The contract is executed in the name of the company, signed by its president and secretary, with the seal of the company attached. It appears that no formal resolution or order was made by the board of directors authorizing the president and secretary to execute the contract, but a majority of them lived at Sherman Center, and executed and carried out a great number of contracts of a like character. Means were furnished by the company to carry out the contracts thus made, and it received and enjoyed the benefits to be derived from the acts and agreements of the officers. The officers appeared to be vested with authority to execute contracts and manage the business affairs of the corporation, and they acted openly and publicly as the agents of the company, with the knowledge and acquiescence of the directors. Under the authority of *Town Co. v. Swigart,* 43 Kas. 292, (23 Pac. Rep. 569,) the company cannot escape liability on the contract on account of a want of authority from the company to the officers to make the same. See, also, *University of Builders v. Martin,* 39 Kas. 750.

There is another claim, that the provision of the charter that "the indetedness of the company shall not exceed $500 at any time," limits the powers of the corporation and renders void the obligation to pay $1,000. This provision has been the subject of consideration by this court, and it was determined that it is to be regarded as a by law of the company, directory only, and not such a provision as will annul the contract, where the corporation has enjoyed the benefits of the same. (*Town Co. v. Morris,* 43 Kas. 282; 23 Pac. Rep. 569.)

The plaintiff in error also insists that the contract is not within the objects of the corporation, and is *ultra vires.* The town company was incorporated for "the purchasing of lands, the surveying and platting of town-sites, and selling town lots and other lands." The corporation may exercise not only the powers expressly enumerated in its charter, if they are author-

ized by law, but "may enter into any obligation or contract essential to the transaction of its ordinary affairs," and incidental to the exercise of the powers expressly enumerated. (Gen. Stat. of 1889, ¶ 1167.) The company is not restricted to the mere purchase and sale of lots, but may doubtless enter into contracts which would directly tend to promote the prosperity of the town, and enhance the value of the lots remaining unsold. To this end, it may expend money for the advertising of the property, the making of improvements on a part of the same, may contract for the erection of school buildings and other improvements, the direct and proximate tendency of which will be to attract people to the town and make the property of the company more desirable and salable. The location of Russell with his bank, his barn and restaurant at the town of Sherman Center no doubt tended directly and proximately to build up the town and give it prestige in that community, thus enhancing the value of the remaining lots and promoting the legitimate objects of the corporation. In *Whetstone v. Ottawa University*, 13 Kas. 320, the question arose whether the Ottawa Town Company could donate the property of the corporation to the Ottawa University for the purpose of erecting a school building outside of the limits of the town of Ottawa, and more than one-fourth of a mile outside of the limits of the property and the land owned by the town company. Mr. Justice BREWER, who pronounced the judgment of the court, remarked that—

"Town-site companies are neither novel nor rare in Kansas. Every county has been the home of several, and the manner of their working, and the means employed to accomplish their purposes, are familiar to us all. Nor is Kansas peculiar in this respect. Every western state is full of them. They are private corporations, organized for the purposes of gain. They take real estate, lay it off in lots and blocks, streets and alleys, induce people to settle and purchase, and by the sale of lots make their profits. . . . If by the donation of one lot they can double the value of the remainder, is not the one lot used directly to accomplish the legitimate object of the corporation? If by donating 100 lots to the county they can

secure the county seat and the erection of county buildings, are they not furthering the very purpose of building up a town? . . . The purpose of securing improvements on the town-site is not simply that the improvements be there, but that thereby the property the corporation has to sell may be enhanced in value. And if the lots were donated to secure the erection of a hospital or school at a remote place, as suggested by counsel, there would be no resultant benefit to the corporation of enhanced value of its unsold lots. It seems to us that this must be the test: If the direct and proximate tendency of the improvements sought to be obtained by the donation is the building up of the town and the enhanced value of the remaining property of the corporation, the donation is not *ultra vires.*"

The discussion in that case furnishes a strong argument that the contract in question was within the powers of the corporation, and that the money expended to bring new buildings and establish new business enterprises in the town directly tended to accomplish the purposes of the corporation. We are of opinion that the contract was not *ultra vires.* But, even if it were not fully authorized, the company is hardly in a position to invoke the application of that doctrine. Russell had performed the contract on his part. His buildings and business have been removed to Sherman Center, and he has united with the town company in building up the town and in augmenting the value of the company's property. These considerations and advantages have been received by the company, and it continues to enjoy the benefits of the contract performed on its behalf by Russell. The company has joined with Russell in the execution of the contract, and officers of the company furnished men and machinery and assisted in moving the buildings. They executed a conveyance to Russell for the lots which they agreed to convey to him, and he, acting in good faith, has done all that was required of him. After the transaction has been carried out, and the company has had the benefits of performance by Russell, it cannot in justice be allowed to repudiate the transaction, although it may have been in excess of authority. (*Town Co. v. Morris,* supra; Mor., Priv. Corp., §§ 632, 634.)

. 25 — 46 KAS.

Some other objections are made, which are not deemed to be material, and, on an examination of the entire record, we find no prejudicial error.

The judgment of the district court will be affirmed.

All the Justices concurring.