## HEMMICK v. STANDARD OIL CO.

(Circuit Court of Appeals, Third Circuit. January 9, 1899.)

No. 13.

**1. EQUITY—LACHES—SUIT FOR ACCOUNTING.**

Where there has been unreasonable delay, or apparent acquiescence for a considerable time, a court of equity will refuse to entertain a bill for an accounting, though not barred by limitation, from considerations of public policy, growing out of the difficulty of doing entire justice after the lapse of such time.

**2. SAME—ALLEGATIONS OF BILL CONSIDERED.**

In 1896 plaintiff filed a bill, from which it appeared that, by the terms of a lease made in 1878, defendant agreed to account for and pay over to plaintiff and his partner annually, ending in 1884, a share of certain profits earned each year, which it guarantied would amount to a specified sum annually. Each year the defendant paid over the sum so guarantied, which was accepted. Plaintiff's partner died in 1886, and plaintiff, since about that time, and until the filing of the bill, has resided abroad. It was alleged that the share of the profits to which plaintiff and his partner were entitled under such contract largely exceeded the amounts paid, and an accounting in relation thereto was asked. It was not shown that plaintiff, or his partner in his lifetime, ever made objection or complaint as to the amounts paid by defendant. *Held*, that the showing was insufficient to excuse the delay in bringing the suit.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

This was a suit in equity for an accounting, and was heard in the circuit court on a demurrer to the bill, which was sustained by BUF-FINGTON, District Judge, in the following opinion:

In March, 1896, Roland J. Hemmick, a citizen of the republic of Switzerland, filed a bill in equity against the Standard Oil Company, a corporation of the state of Pennsylvania, and the Standard Oil Company, a corporation of the state of Ohio, praying an accounting. To this bill the former company, which alone was served with process, appears, and demurs, inter alia, on the ground of laches in bringing suit. The facts disclosed by the bill are as follows:

On March 9, 1878, A. Lyons & Co., a firm composed of A. Lyons and the plaintiff, who sues as surviving partner, entered into an agreement with the Standard Oil Company of Pennsylvania, by which it leased to said company its oil refinery and certain other property, and agreed to operate the refinery for five years for said company. Upon its part the company agreed to pay Mr. Lyons an annual salary of $6,000, and Mr. Hemmick one of $2,500, and to the firm the sum of $3,600 per year for ground rent. It also agreed to pay a further sum of rental as follows: In March, 1879, a sum equal to $1/268$ part of the amount of net profits for the year 1878 of the Standard Oil Company of Ohio, certified to by the treasurer and auditor of the latter company; in the months of March, 1880, 1881, 1882, and 1883, respectively, $1/201$ of the like profits for the respective preceding year; and in March, 1884, $1/804$ of the like profit for 1883. These payments the company guarantied should average $9,162.50 per quarter, and in the aggregate at least $183,250. The bill concedes the salary, ground rent, and profits to the guarantied amount were paid. The agreement further provided "that, where the percentage of the total amount of the said net profits to be paid to the parties of the first part, as above provided, shall exceed the sum above guarantied, a statement of the amount of said net profits for and during the respective periods aforesaid shall and will be procured by the party of the second part, and delivered

by it to the parties of the first part, which statement shall be made and signed by the treasurer and auditor of the said Standard Oil Company of Cleveland, Ohio, and by their officers certified to be true and correct, and shall be binding and conclusive on all parties." By an addition to said contract, the Standard Oil Company covenanted with A. Lyons & Co. that the Pennsylvania Company would fulfill its covenants. The firm of A. Lyons & Co. continued to do business at Pittsburg until March 9, 1883, when it sold all its property to the Standard Oil Company of Pennsylvania. Mr. Lyons died at Pittsburg, August 9, 1886. From some period prior to Mr. Lyons' death (how long the bill does not state), and since that time, Hemmick has resided abroad. For eight years prior to the filing of the bill he has been engaged in the public service of the United States, and has continuously resided at Vevey, Switzerland. The bill does not state where Mr. Hemmick resided from March, 1883, until he went abroad, some time prior to Mr. Lyons' death, and whether he returned to the United States after so going abroad. No statement is made as to whether the affairs of the firm were settled and closed up between the partners, or whether any steps were taken by Mr. Lyons, or demands made by him, to procure payment of any alleged liability of the lessee company to the firm under the contract. The bill goes on to charge (and this is the basis of the present suit) that the amount which the firm is entitled to receive under the provision quoted largely exceeded the stipulated minimum sum of $36,650 per annum, and that no part of the sum so due, which, they charge, was at least $100,000, has been paid, and that no statement of said net profits, certified as provided, has been furnished by either company. It alleges that frequent demands have been made by the complainant for such statements, but when such demands were made is not shown. As a reason for delay in bringing suit, the bill sets forth: "Your orator further avers that by reason of his absence beyond the seas, and his employment in the service of the United States, obliging him to remain absent from this country, he was not informed of the sums of money due and becoming due and owing to the said firm, or of the nonpayment thereof, or that the said defendants herein denied liability, and refused to render the statements and to account for the profits and rentals under said contract to him as surviving partner of said firm under the said contract, nor had he at any time any means of obtaining such information, he having necessarily left the matter in charge of his former co-partner, Andrew Lyons, who died on or about the 9th day of August, 1886, during the absence of your orator in the republic of Switzerland."

The complaint is a stale one. The first annual payment of rental fell due in March, 1879, and the last in March, 1884, and this suit was not brought until March, 1896. But this is not a case of no accounting whatever. During the life of the lease, concededly, all the payments provided for by it, amounting in the aggregate to $48,750 a year, were made as they fell due, and, for aught that appears in the bill, were accepted by the plaintiff and his partner without question, and Mr. Lyons died some two years after, without claiming anything further from the company. Where Mr. Hemmick was during the two years following 1884 is not shown, nor is any reason suggested why, if he did not regard the payments as in full, he did not raise some objection. No reason is suggested why the statute of limitations did not begin to run when the last payment fell due, for, even if Hemmick were under any disability (which fact does not affirmatively appear), Mr. Lyons was on the ground, and his subsequent death, or the voluntary return of Hemmick to his home in Switzerland, would not toll its running. There was nothing to prevent the latter from communicating by letter or through counsel, if he saw fit to employ any, and make demand upon the company for settlement. Indeed, it was his duty to do so. The parties were dealing at arm's length. There was no trust relationship between them. No trust was reposed in the one, and relied on by the other. That he did neither, but supinely suffered the matter to rest upon the firm's acceptance of a stated sum, without complaint through all these years, are weighty facts, and, in the absence of any substantial explanation, conclusive against him, when, years afterwards, he comes into a court of equity, and prays an enforced accounting. Assuredly, he cannot complain that such accounting is denied him, when he has taken

absolutely no steps during these years to secure a voluntary one, or to place himself in a position to enforce one by law. Stale claims are not regarded with favor by courts. Statutes of limitations are for the general good, and their wholesome application in most cases best subserves the ends of justice. The application by a court of equity of analogous principles, even when the statutes of limitations do not apply, is one of the beneficent powers lodged in the hands of a chancellor.

In Godden v. Kimmell, 99 U. S. 201, Mr. Justice Clifford said: "Stale claims are never favored in equity, and where gross laches is shown, and unexplained acquiescence in the operation of an adverse right, courts of equity frequently treat the lapse of time, even for a shorter period than the one specified in the statute of limitations, as a presumptive bar to the claim. Stearns v. Page, 7 How. 819; Badger v. Badger, 2 Cliff. 154, Fed. Cas. No. 718. * * * But there is a defense, peculiar to courts of equity, founded on lapse of time and the staleness of the claim, where no statute of limitation governs the case. * * * Such courts, in such cases, often act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Badger v. Badger, supra; Roberts v. Tunstall, 4 Hare, 269; Stearns v. Page, supra."

In Landsdale v. Smith, 106 U. S. 392, 1 Sup. Ct. 350, it is said: "It has been a recognized doctrine of courts of equity, from the very beginning of their jurisdiction, to withhold relief from those who have delayed for an unreasonable length of time in asserting their claims. Elmendorf v. Taylor, 10 Wheat. 152; Piatt v. Vattier, 9 Pet. 405; Maxwell v. Kennedy, 8 How. 210; Badger v. Badger, 2 Wall. 87; Cholmondeley v. Clinton, 2 Jac. & W. 1; 2 Story, Eq. Jur. § 1520."

So, also, in McKnight v. Taylor, 1 How. 168: "It is not merely on the presumption of payment, or in analogy to the statute of limitations, that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith, and reasonable diligence to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere, after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice, when the original transactions have become obscure by time, and the evidence may be lost. The rule upon this subject must be considered as settled by the decision of this court in the case of Piatt v. Vattier, 9 Pet. 416, and that nothing can call a court of chancery into activity but conscience, good faith, and reasonable diligence, and, where these are wanting, the court is passive, and does nothing, and therefore, from the beginning of equity jurisdiction, there was always a limitation of suit in that court."

And to the same effect in Fosdick v. Machine Shop, 58 Fed. 817: "It is a well-settled principle that a court of equity will not give its assistance to enforce a right, however clear it may have once been, when a long time has elapsed without action by the owner of the right. Hence, in matters of account, although not barred by the statute of limitation, courts of equity refuse to interfere, after a considerable lapse of time, from considerations of public policy, growing out of the difficulties of doing entire justice, when the original transactions have become obscure by lapse of time, and the evidence may be lost. Story, Eq. Jur. § 529; Badger v. Badger, 2 Cliff, 137, Fed. Cas. No. 718; Id. 2 Wall. 87."

Applying these principles to the case before us, we are of opinion the delay in bringing suit has, under the facts of the case, the situation of the parties, and the relationship between them, been such that it must be adjudged a fatal barrier to its prosecution in a court of equity. This cause of demurrer being sustained, a discussion of the other grounds alleged is needless.

Wm. H. Van Steenbergh, for appellant.

D. T. Watson, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BUTLER, District Judge.

DALLAS, Circuit Judge. We all concur in the conclusions of the circuit court, and in the reasons therefor expressed in its opinion. That opinion is so full and satisfactory that any further discussion of the case is needless. The decree is affirmed.