STATE OF MISSOURI ex rel. HERBERT S. HAD-
LEY, Plaintiff, v. THE BANKERS TRUST
COMPANY, Defendant.

H. A. LEE, Receiver Garland State Bank, Plaintiff
in Error, v. THE BANKERS TRUST COM-
PANY, and IRA M. COBE, Purchaser of the As-
sets of the Bankers Trust Company, Defendants
in Error.

### Kansas City Court of Appeals, June 12, 1911.

1. **TRUST COMPANIES: Ultra Vires: Banking.** In a suit by
the receiver of a Kansas bank to hold the defendant, a Missouri
Trust Company, to the stockholder's double liability under
Kansas laws, the petition set forth that the trust company held
seventy-three per cent of the bank's stock in the names of
"dummies." *Held*, under the provisions of section 1124, R. S.
1909, the trust company had no power to engage in the banking
business, directly or indirectly, and hence the purchase of the
stock of the Kansas bank by the Missouri trust company for
the purpose of controlling the management of the bank was
*void*, for the reason that not only did it exceed its corporate
powers, but was violative of the sound rule of public policy
which forbids the creation of monopolies through the owner-
ship by one corporation of controlling interests in the stocks
of others.

2. ———: ———: ———: **Defenses.** The rule that a corpo-
ration, which has received the benefits of a contract, is estopped
from setting up the defense of "*ultra vires*," and the rule that
the State alone can complain of such a contract, obtains only
in cases where the excessive act of the corporation is not
absolutely void but only voidable.

3. ———: ———: ———: **Defense on Demurrer.** The rule
that the defense of *ultra vires* cannot be raised by demurrer
does not apply where the petition shows on its face that the
act or contract in question is void and not merely voidable.

Error to Jackson Circuit Court.—*Hon. Hermann
Brumback*, Judge.

AFFIRMED.

*W. R. Biddle, Keplinger & Trickett* and *Thurmond & Farrar* for plaintiffs in error.

*Frank Hagerman* and *Charles A. Loomis* for defendant in error.

JOHNSON, J.—In October, 1907, an action was instituted in the circuit court of Jackson county by the State of Missouri at the relation of its attorney-general against the Bankers Trust Company, a corporation organized under the laws of Missouri, relating to trust companies. The company had become insolvent and the purpose of the action was to wind up its affairs for the benefit of its creditors and stockholders. Shortly after the petition was filed the circuit court appointed a receiver who took charge of the assets and administered them under the direction of the court. After they were sold and the proceeds distributed among the creditors the receiver filed his final report and prayed to be discharged. On the day his application was set for hearing, H. A. Lee, receiver of the Garland State Bank of Garland, Kansas, asked and obtained leave of court to file an intervening petition, the object of which was to recover a judgment against the estate of the Bankers Trust Company, on a demand of $7300, allged to be due the estate of the Garland State Bank, and to be founded on the liability incurred by the Bankers Trust Company under the laws of Kansas imposing a double liability upon stockholders in corporations organized under the laws of that State. It appears from the averments of the intervening petition that the Garland State Bank was incorporated under the laws of Kansas with a capital stock of $10,000, divided into one hundred shares of the par value of one hunderd dollars each; that at various times before the failure of the bank or of the Bankers Trust Company three different certificates of stock representing in the aggregate 73 shares of the par val-

ue of $7300 were issued respectively to M. H. Woods, Myron A. Waterman and J. O. Ellis; that said stock stood on the books of the bank in the names of said Woods, Waterman and Ellis and at no time was in the name of the Bankers Trust Company and that about eighteen months before the filing of the intervening petition, the bank failed and the intervenor was appointed its receiver in a proceeding instituted in Kansas. We quote from the petition as follows:

"Petitioner further alleges as a fact which he has learned by inquiry and upon information and belief that the Bankers Trust Company, through its officer, purchased the Garland State Bank, and that the stock of M. H. Woods, M. A. Waterman and J. O. Ellis, as alleged in the petition, was paid for by said Bankers Trust Company and was taken out in the name of said J. O. Ellis in order that he might be cashier of said bank, and that M. A. Waterman was an employee and M. H. Woods was an officer in the Bankers Trust Company at the time. That the Garland State Bank declared dividends after its organization and before its failure on several occasions upon said stock of J. O. Ellis, M. H. Woods and M. A. Waterman, which was then held by the Bankers Trust Company by assignment, and that said Bankers Trust Company collected and appropriated such dividends. That at one time during said period $600 was distributed by said Garland State Bank upon its $10,000 of capital stock, and of said sum the Bankers Trust Company received $432.

That said Garland State Bank from its purchase as aforesaid to the time of its insolvency was controlled by the officers of the Bankers Trust Company; that said Bankers Trust Company supplied said Garland State Bank with most of its discounts during said time, and that the cashier was constantly under the direction and management of the officers of the Bankers Trust Company, and that during all of said time

said M. H. Woods and Myron A. Waterman were officers and employees of the Bankers Trust Company, and said J. O. Ellis was the cashier of the Garland State Bank.

Petitioner further says that by reason of the premises the owner of the stock which stands in the name of M. H. Woods is indebted to said receiver in the sum of $4000; that the owner of said stock standing in the name of Myron A. Waterman by reason of the premises is indebted to said receiver in the sum of $2300; and that the owner of the stock standing in the name of J. O. Ellis by reason of the premises is indebted to the receiver in the sum of $1000, making a total of $7300.

Petitioner further says that said Woods, Waterman and Ellis are hopelessly insolvent and unable to pay any of said indebtedness.

Petitioner further says that he is reliably informed and believes, and states and avers it as a fact, that said stock so held by said Woods, Waterman and Ellis was paid for by the Bankers Trust Company; that the stock was issued to said Woods, Waterman and Ellis, but the certificate thereof was assigned and delivered by them to said Bankers Trust Company, but that such assignment and transfer was never carried out on the books of the Garland State Bank, nor had the depositors of said Garland State Bank, any knowledge of the same; that all of these transactions occurred before said Bankers Trust Company was placed in the hands of a receiver, and before the Garland State Bank was placed in the hands of a receiver, and the said H. A. Lee as receiver is informed and believes and alleges the fact to be that said Bankers Trust Company was the real owner of said stock and had the physical possession thereof and well knew that said M. H. Woods, Myron A. Waterman and J. O. Ellis were insolvent and that they knowingly and purposely failed to have said stock trans-

ferred into their own name for the purpose of escaping double liability.

Petitioner further states that by reason of said transaction the Bankers Trust Company was the equitable owner of said stock.

Petitioner further says that the assets of the Garland State Bank, when converted into cash, will not pay the indebtedness of the same, and that said double liability on said stock is necessary in order to assist in paying the creditors.

That there was proved up before said H. A. Lee, receiver, as liabilities of said Garland State Bank, the sum of $67,597.95; that there has been paid on said liabilities the sum of $43,957.66, leaving a balance unpaid of said liabalities of over $23,000, and with expenses incident to said receivership will make the liabilities of said bank at least $25,000; that the receiver has proceeded against and collected the double liability from each and every stockholder in said bank residing in Kansas, and excepting the claims herein presented for the stock standing in the names of M. H. Woods, J. O. Ellis and Myron A. Waterman there is only one other stockholder that has not paid the double liabality, and that the said H. A. Lee as receiver does not know the whereabouts of said stockholder.

Petitioner further avers that the Bankers Trust Company, through Mr. Marks, its receiver, has sold to Ira M. Cobe, a resident and citizen of Chicago, in the State of Illinois, all of the assets in said defendant's hands and belonging to said Bankers Trust Company, in consideration for which said Ira M. Cobe has paid and agreed to pay a sum equal to forty-nine per cent on all of the indebtedness of said Bankers Trust Company, and that by reason of the premises this plaintiff is equitably and legally entitled to a participation in the benefits derived from said sale, and that unless

such relief is granted said H. A. Lee, receiver, will be unable to derive any benefit from the double liability on said stock as provided for under the laws of the State of Kansas."

The prayer of the petition is "for an order and decree allowing said claim of $7300 against said defendant and order that said petitioner may participate in the proceeds of the sales of the assets of the Bankers Trust Company to said Ira M. Cobe, and for such other and further relief as the facts and the equities of the case may permit."

The receiver of the Bankers Trust Company and Ira M. Cobe separately demurred to this petition on the following grounds:

"First. Because it appears on the face of said petition that the said receiver, H. A. Lee, has no right to sue herein in this court.

Second. Because it appears from the facts alleged in said petition that neither this court, nor the court that appointed H. A. Lee, receiver of the Garland State Bank, has granted to said receiver authority to bring this suit.

Third. Because it appears from the facts alleged in said petition that M. H. Woods, J. O. Ellis and Myron A. Waterman are the owners respectively of the stock of the Garland State Bank described therein and are alone liable for any stockholders' liability arising out of the ownership of said stock.

Fourth. Because said petition does not allege facts sufficient to show that the Bankers Trust Company was or is a stockholder in the Garland State Bank, or liable as such.

Fifth. Because the Bankers Trust Company has no power or authority in law to purchase or become the owner of any stock in the Garland State Bank, or to become liable as a stockholder therein.

Sixth. Because the estate of the Bankers Trust Company has been liquidated and closed up and the

proceeds thereof paid out to the creditors by this court, and there is now no assets in the custody of the receiver of said Bankers Trust Company applicable to the payment of the claims alleged in plaintiff's petition.''

These demurrers were sustained by the court and on the refusal of the petitioner to plead further, judgment was rendered in favor of defendants in error.

The questions of law presented by the pleadings for our determination thus are correctly stated by counsel for plaintiff in error in their brief: ''1. Has H. A. Lee, receiver, a right to sue in this court, and if so, is he authorized under the laws of Kansas to sue? 2. Is the Bankers Trust Company as the equitable owner of the stock in the Garland State Bank liable under the laws of Kansas to an amount equal to the face value of the stock? 3. Had the Bankers Trust Company power or authority in law to purchase or become the owner of the stock in the Garland State Bank, and if not, does such want of power relieve it of liability.''

The decision of any one of these three questions adversely to appellant will necessitate an affirmance of the judgment and, since we have reached the conclusion that the third question should be so decided we shall not discuss the first two. We, therefore, assume for argument (without so holding) that the Kansas receiver is authorized by law to maintain an action of this character and that the real owner of stock who, for the purpose of evading the liabilities of the stockholder has had his certificate registered on the books of the corporation in the name of a ''dummy'' stockholder, nevertheless, should be required to bear the burdens imposed by the Kansas statutes on stockholders in banking corporations.

The facts alleged in the petition show beyond dispute that the Bankers Trust Company purchased seventy-three per cent of the stock of the Kansas bank

for the purpose of controlling and managing its business and affairs and that while the bank apparently continued to do business in its corporate name and in the guise of a separate and independent corporate entity, in reality its identity was merged into that of the trust company which absorbed its business and assets and managed and controlled them as though they constituted a mere branch or department of the business of the Trust Company. In short, the latter corporation swallowed the bank and used its name and corporate machinery for its own purposes.

The Bankers Trust Company had no power or authority to engage in the banking business either directly or indirectly. The powers of such corporations are defined in section 1124, Revised Statutes 1909, and under that definition, are exclusive of all others under the rule that "the enumeration of the powers conferred upon trust companies by the statute must be held to exclude all others." See State ex inf. v. Lincoln Trust Co., 144 Mo. l. c. 588, where it was expressly held that a trust company has no authority to engage in the banking business.

The ninth clause of section 1124, Revised Statutes 1909, authorizes trust companies "to buy and sell all kinds of government, state, municipal and other bonds, and all kinds of negotiable and non-negotiable paper, stocks, and other investment securities." The grant of authority to buy and sell stocks and other investment securities as comercial commodities carries with it neither the express nor implied authority to purchase the stock of other corporations for the purpose of controlling their management. [DeLavergne Co. v. German Savings Inst., 175 U. S. 40.] Nor to use the power conferred by law for the purpose of indirectly engaging in business activities forbidden to the corporation by the express provisions of the statute. The act of the Bankers Trust Company in controlling the management of the Kansas bank through the own-

ership of a large majority of the stock of the bank was not buying and selling stocks within the meaning of the statute, but was a clear and flagrant evasion and violation of the law. But it is argued by plaintiff in error that since the Trust Company received the benefits of the contract of purchase and the contract should be regarded as fully executed, the respondents are estopped from interposing the defense of *ultra vires*, citing. [Interstate Hotel Co. v. Amusement Co., 103 Mo. App. 198; Chenoweth v. Express Co., 93 Mo. 18; Grocery Co. v. Smith, 74 Mo. App. 419; City of Goodland v. Bank, 74 Mo. App. 365; Dunlap v. Dunseth, 81 Mo. App. 17; Town Co. v. Fletcher, 46 Kans. 524; Town Co. v. Norris, 43 Kan. 282; Town Co. v. Russell, 46 Kan. 382; Camden R. Co. v. Mayse Land Co., 48 N. J. L. 550; Chapman v. Zinch, 156 N. Y. 551; Dewey v. Toledo R. Co., 91 Mich. 351; Manhattan Hardware Co. v. Phelan, 128 Pa. St. 110; Pannabaker v. Railroad, 67 Atl. 923 (Pa.); Eastman v. Parkinson, 103 N. W. 649 (Wis.); St. John v. Loan Association, 113 N. W. 863 (Ia.); Emigh v. Earling, 115 N. W. 128 (Wis.); Sherman Center Town Co. v. Fletcher, 46 Kan. 524; Albin v. Commonwealth Co., 108 S. W. 299 (Ky.); Cass County v. Ins. Co., 188 Mo. 1.]

And further counsel invoke the rule that "where a corporation is doing things and making contracts which are *ultra vires* the State alone can object." [Citing Summet v. Realty Co., 208 Mo. 501; Harris v. Gas Co., 76 Kan. 750; Hall v. Farmers Bank, 145 Mo. 418; Bank v. Mathews, 98 U. S. 621; Plaster Co. v. Blue Rapids Township, 77 Kan. 580.]

We held in York v. Farmers Bank, 105 Mo. App. 1. c. 141:

"The defendant's objections are fully answered by what is said in City of Goodland v. Bank, 74 Mo. App. 365. In that case the authorities are fully cited and reviewed and the conclusion reached that, "where the act is not wrong *per se,* where the contract is for

a lawful purpose in itself, as in the present case, and has been entered into in good faith and fairly executed by the party who seeks to enforce it, we must assent to the doctrine of those authorities which hold that the excess of the corporate powers of the contracting party which has received the benefit of the contract is an unconscionable defense which may not be set up to exempt from liability the party pleading it. And in the same case it was further held that, a violation of a charter cannot be taken advantage of collaterally or incidentally but only on a direct proceeding instituted for that purpose. And it is further held in that opinion that in a collateral proceeding to declare acts of a trading corporation void it must be shown to be the intention of the charter, as gathered from its terms, not only to restrict the business of the corporation to certain things, but in addition, to declare that when it exceeds these restrictions the act should be void. If such intention does not exist in the charter the State alone can question such acts as *ultra vires* except when the contract is against public policy and good morals. The contract or arrangement here was not *malum in se or malum prohibitum,* but was unauthorized by defendant's charter—the statute. It is clear from the authorities cited in the case we have just quoted from that the defendant entered into a contract or agreement that was in excess of its charter powers (article 8, chapter 12, Revised Statutes) and that the contract and arrangement was executed by the other contracting party, and, therefore an enlightened public policy requires that such contract and arrangement be upheld and enforced, rather than evaded.''

The rules of estoppel and of the sole right of the State to complain obtain only in cases where the excessive act of the corporation is not absolutely void but only voidable; not wrong *per se* or against public policy and good morals but wrong merely because the

act is not within the scope of the powers conferred by law on the corporation. We know of no case in this State where the rules under consideration have been applied where the corporation has become a party to a contract, void for the reason that it was wrong in itself and a violation of sound public policy and good morals.

The case of Anglo-American Land Co. v. Lombard, 132 Fed. Rep. l. c. 736, *et seq.*, is so pertinent that we quote at length from the opinion written by Judge Van Deventer:

"The only authority of the Missouri Company to purchase stock in another corporation is found in subdivision 9, section 2839, Revised Statutes Mo. 1889, which reads: 'To buy and sell all kinds of government, state, municipal and other bonds, and all kinds of negotiable and non-negotiable paper, stocks and other investment securities.' The context shows very clearly that the purpose was not to authorize the purchase of all of the stock of another company for the purpose of controlling its management, but to authorize the buying and selling of stocks as investment securities, in like manner as government bonds and other securities named are bought and sold. Controlling the management of a corporation of another state through the ownership of its entire stock is not buying or selling investment securities, nor is it fairly incidental thereto. The hazards of such venture are altogether repugnant to the purposes for which the Missouri Company was formed, which included the handling and investing of the money of others, executing trusts under deeds and wills, acting as guardian of infants and insane persons, and guarantying the fidelity of persons holding places of public or private trust; all requiring the maintenance of a high standard of credit and stability on the part of that company. It is impossible to escape the conclusion that the purchase of the Kan-

sas Company's stock was beyond the powers of the Missouri Company.

In the absence of any established rule of decision in the State of Missouri in respect of the effect of corporate acts which are *ultra vires* (and no local rule of decision has been called to our attention by counsel), we must apply to this case the rule recognized in the Supreme Court of the United States. That rule, as stated in Central Transportation Company v. Pullman's Car Co., 139 U. S. 59, 11 Sup. Ct. 478, 35 L. Ed. 55, and as applied in many subsequent cases, is:

"A contract of a corporation which is *ultra vires,* in the proper sense—that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature—is not voidable only, but wholly void, and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the Legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisite to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws."

See, also, McCormick v. Market Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817; California Bank v. Kennedy, 167 U. S. 362, 367, 17 Sup. Ct. 831, 42 L. Ed.

198; Concord First National Bank v. Hawkins, 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007; Thomas v. Railroad Co., 101 U. S. 71, 25 L. Ed. 950; Scovil v. Thayer, 105 U. S. 143, 26 L. Ed. 698; Pennsylvania R. R. Co. v. St. Louis, etc., R. R. Co., 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83; Schofield v. Goodrich Bros., Banking Co., 39 C. C. A. 76, 98 Fed. 271.

What has been said goes far to support the contention that the transaction between the two companies was also *ultra vires* of the Kansas Company, but it is unnecessary to definitely determine that question, because if the transaction was beyond the corporate powers of either company, it is as invalid as if beyond the corporate powers of both. [Louisville & Nashville Railroad v. Kentucky, 161 U. S. 677, 692. 16 Sup. Ct. 714, 40 L. Ed. 849.] Defendants' transfer of their stock in the Kansas Company was a nullity. Nothing done in pursuance of the transfer, no acquiescence therein, and no receipt of benefits therefrom, could infuse validity into that act or prevent the successful assertion of its nullity. The claimed estoppel is not tenable. The liability for the corporate debts, with which the holders of the Kansas Company's stock were charged, under the Constitution and laws of Kansas, was not extinguished or discharged by the transfer. That liability did not pass to the Missouri Company, because it could not, and therefore did not, become a stockholder in the Kansas Company. It follows that defendants continued to be stockholders in the Kansas Company, and remained liable for the corporate debts in like manner as if the transfer had never occurred.''

The purchase of the stock of the Kansas bank by the Bankers Trust Company for the purpose of controlling the management of the bank was void for the reason that not only was it in excess of the corporate powers of the Trust Company but was violative of the sound rule of public policy which forbids the creation

of monopolies through the ownership by one corporation of controlling interests in the stock of others.

What we have said answers the point of plaintiff in error that the defense of *ultra vires* cannot be raised by demurrer. That rule does not apply where the petition shows on its face that the act or contract in question is void and not merely voidable.

The judgment is affirmed. All concur.