BYRON A. KISSANE, Assignee of the DURANGO
MERCANTILE COMPANY, Appellant, v. JACOB
T. BREWER, Respondent.

Kansas City Court of Appeals. May 23, 1921.

1. CORPORATIONS: Statutes: Foreign Corporations: Ratification: Purchase of Own Stock by Corporation Void, and Transaction Cannot be Ratified so as to give the Same any Legal Effect. Under the Colorado Statute (Sec. 996, Mills Ann. Stats. 1912), the purchase of its own stock by a corporation is not merely voidable but is absolutely void, and no amount of ratification by the stockholders and the corporation could galvanize it into life and force.

2. LIMITATION OF ACTIONS: Suspension: Evidence: Colorado Statute of Limitations not Suspended by Defendant Leaving the State, Because it was not Shown that Colorado had a Statute Suspending Operation of Statute During Absence of Defendant. The fact that defendant left Colorado, and came to Missouri, cannot be relied on to suspend the Colorado Statute of Limitations, because it was not shown or even claimed, that Colorado had a statute suspending the operation of the Statute of Limitations, during the defendant's absence from the State, and it cannot be presumed that Colorado has a law similar to our Statute (section 1326, R. S. 1919), suspending limitation on account of absence from the State, especially, where the record shows that under Mill's Ann. Stats. Colo. 1912, section 6992, the common law of England was in full force, and under the common law, as adopted by Colorado, there was no suspension of limitations because of absence of defendant from the State.

3. ———: Trusts: Actions to Declare Trust Ex Maleficio Barred in Five Years. Under section 1317, Revised Statutes 1919, an action to declare a trust ex maleficio is barred in five years.

4. STATUTES: Construction: Suspension of Limitations: Section 1326, R. S. Mo., 1919, Applies Only to Causes of Action which Accrue against Residents of Missouri at Time of Accrual. Section 1326, Revised Statutes 1919, suspending the period of limitations, cannot be invoked by the plaintiff, where defendant was a non-resident of Missouri, at time of accrual of cause of action, as it applies only to causes of action accruing against persons who are residents of Missouri at the time of accrual thereof.

5. **LIMITATION OF ACTIONS:** Statutes: Construction: **Trusts:** **Suit Within One Year after Nonsuit Must be on Same Cause of Action.** For a suit to save a second suit from bar of the Statute of Limitations the cause of action must be the same in both actions, involving the same subject-matter and requiring the same evidence to sustain it, and where a suit is brought within one year after nonsuit, to declare a trust *ex maleficio*, in an action to recover value of goods in suit on *quantum meruit*, section 1329, Revised Statutes 1919, allowing suit to be brought within one year after nonsuit, does not authorize the commencement of such an action nor prevent the bar of the Statute of Limitations to a suit for the declaration of a trust *ex maleficio*.

6. **TRUSTS:** Express: Implied: Ex Maleficio: Limitation of Actions: **Statute of Limitations Runs Against Implied Trusts:** An action to make defendant a trustee *ex maleficio* is based upon an implied trust, not on an express trust, and hence the Statute of Limitations can run in favor of defendant.

Appeal from the Circuit Court of Jackson County.— *Hon. Allen C. Southern*, Judge.

AFFIRMED.

*Lewis P. Main, Perkins & Perkins* and *Ellis & Yale* for appellant.

*Scarritt, Jones, Seddon & North* for respondent.

TRIMBLE, P. J.—This is an action in equity, brought by the Assignee of the Durango Mercantile Company, a corporation, of Durango, Colorado, against defendant, a former stockholder in and general manager of said corporation, to have him declared a trustee *ex maleficio* and to recover, for the benefit of said corporation and its creditors, the value of certain assets of the corporation alleged to have been sold or turned over to defendant in exchange for the stock owned by him in said Mercantile Company. Upon a hearing before the Chancellor, the decree was in favor of defendant and plaintiff has appealed.

Some time in the forepart of the year 1911, the corporation known as the Durango Mercantile Company was organized, in Durango, Colorado, with an authorized capital of $20,000 and a paid up capital of $8000. This last was made up by the transfer to the corporation of two stocks of merchandise, one owned by a partnership composed of R. L. Alexander and James B. Van Daniker, and the other being the Coder-Vandeviele dry goods stock. The corporation thus formed and organized, conducted a general merchandise or department store in Durango, having a department of groceries and meats, one of hardware, and another of dry goods, the latter being the Coder stock as above stated.

In the fall of 1911, defendant traded the remnants of a livery stable (falling into disuse because of the encroachments of the automobile), for stock in the said corporation of the par value of $3250, and shortly thereafter he purchased an additional two shares of the par value of $100 each.

About January 1, 1912, defendant was elected to membership in the Board of Directors and was made General Manager of the Company, succeeding James B. Van Daniker; and R. L. Alexander was President. Byron A. Kissane, now the corporation's assignee for the benefit of creditors, became a stockholder therein about March 8, 1912.

Things did not seem to prosper with the corporation. Brewer, the defendant herein, was not satisfied with the situation the Company was in. It had sold so many goods on credit (over $8000 worth), and had so many accounts out that it had no money with which to meet its bills and keep its stock up-to-date and attractive, particularly the dry goods stock as it was peculiarly affected thereby. The stockholders also were not satisfied with Brewer as a Manager. As the corporation was needing money to meet its bills, Brewer advanced $1333.33 to the Corporation and took its note for that amount, while additional money was obtained at the First National Bank of Durango.

About March 25, 1912, all of the stockholders with the possible exception of one—Conroy who had one and a half shares—agreed that something had to be done, some change had to be made, or an assignment would be imperative.

According to plaintiff's evidence, defendant made a proposition that he would take over the dry goods stock and the safe, cash register and fixtures going with that stock, and in return therefor he would pay certain bills the company owed on account of it, cancel and turn over to the company the $1,333.33 note he held against it, and cancel the debts owed by the company to him and his daughter for their unpaid salary, and also turn back to the company his stock therein which he considered of no value. According to other of plaintiff's evidence he was also to refund the premium on certain insurance and take certain notes belonging to the company. According to this evidence the stockholders were glad to do this and get defendant out of the corporation.

According to defendant's evidence, the dry goods stock was a burden to the company as it consisted of two or three old stocks and had been sold off down to the "tailings" thereof, leaving little that was salable, and it could not be sold unless money was put into it and fresh up-to-date goods were bought and added to it so as to have what people wanted and would buy. He testified that the president of the company said to defendant that if the company could get rid of the dry goods stock and the debts owed thereon, and cancel the lease on that part of the building, it would be relieved of a great deal of expense as well as the necessity of making an assignment. Whereupon the defendant, in order to avert an assignment, offered to take the dry goods stock off their hands, and the president said he would call a meeting of the stockholders and let him know. Afterwards she returned and said they had agreed to the proposition.

Thereafter, on March 25, 1912, a written agreement was entered into as follows:

"This agreement made and entered into on this the 25th day of March, A. D. 1912, by the Durango Mercantile Company of Durango, Colorado, acting by its several stockholders, and Jacob T. Brewer, also a stockholder in said company, witnesseth: That the said The Durango Mercantile Company, acting by its stockholders as aforesaid, hereinafter called the party of the first part, have sold and by these presents does sell and deliver to the said Jacob T. Brewer, hereinafter called the party of the second part, all the stock of dry goods, now in the dry goods department of the said party of the first part at the storehouse in the City of Durango, consisting of boots, shoes, clothing, caps and hats, jewelry, notions and furnishing goods carried in stock by it, including all furniture and fixtures used in connection with such dry goods business; also including one small safe and one new National Cash Register, used in connection with such business; also one certain promissory note, with all accrued interest thereon, made and executed by F. H. & D. C. Roberts to said party of the first, in the sum of six hundred and forty-one dollars and ten cents ($641.10); also one certain promissory note with accrued interest payable to the party of the first part by Garvino Trujillo in the sum of one hundred dollars ($100). Also one certain promissory note with accrued interest payable to the party of the first part by E. M. and M. A. Cooper in the sum of $505.65.

"In consideration of the foregoing, sale and transfer of the said personal property to him the said party of the second part, he, the said party of the second part, agrees to deliver and does hereby assign and deliver to said party of the first part, all the certificates of stock held by him, in the capital stock of the said party of the first part, amounting to the sum of three thousand, three hundred and fifty dollars ($3350); also to cancel and deliver to the said party of the first part, a certain promissory note which he the said party of the second part holds against the said party of the first part, in the sum of one thousand three hundred and thirty-

three dollars and thirty-three cents ($1333.33); also to cancel and receipt all salary due from the party of the first part to the said party of the second part and his daughter Florence; also to assume and pay one-third of all taxes due by the party of the first part for the year 1911; also to assume and pay all bills due and to become due on the stock of goods assigned and sold to him by the party of the first part as above set out.

"And it is further mutually understood and agreed by and between the parties hereto, that the said party of the first part will assume and pay the premium on one thousand dollars ($1000) insurance on the stock of dry goods hereinbefore assigned and sold to the party of the second part.

"And it is further mutually understood and agreed by and between the parties hereto, that the party of the first part is to have and collect all bills and account due it and own the same free from any claim of the party of the second part, and that it will pay all bills and accounts due by it without any liability attaching to the said party of the second part.

"It is further mutually understood and agreed, that should it become necessary, the said party of the first part will cause and procure its action to be ratified by its board of directors.

"Signed in duplicate March 25, 1912.
                    "By F. E. Dodger
                        W. J. Evans, Stockholder,
                        James B. Van Daniker,
                        A. A. Burnham,
                        R. L. Alexander,
                        Byron A. Kissane,
                        M. E. Scaggs,
"J. T. Brewer, Party of the second part."

All of the stockholders, except Conroy, signed the above contract, and under it defendant took possession of the dry goods, fixtures and notes described. He moved the stock of dry goods to a location a block distant, and there opened up a dry goods store adding thereto

new goods which he got by borrowing $2450 and putting in an additional $300 of his own. Here he ran a dry goods business for nineteen months. The stockholders of the corporation were fully cognizant of what was done, made no objection thereto, and cancelled the stock in the corporation turned over by defendant, and continued to run the business of the grocery, meats and hardware, left after divorcing therefrom the dry goods stock.

After taking over said stock, defendant complied with the contract of March 25, 1912, by paying $64.60 taxes assessed against the corporation, and also paying to Burnham, Hanna & Munger Dry Goods Co. $778.35 in full of its bill against the corporation on account of the dry goods stock, also $275.50 to the Hamilton Brown Shoe Co. for a similar account, also cancelling the two salary debts owed by the Company to defendant and his daughter, amounting to $104 and $42 respectively, and turning over to the corporation his stock therein as heretofore stated.

There never seems to have been any inventory made or kept of the dry goods nor any list of the said stock turned over to defendant. It seems to have just been "lumped" off to defendant.

Plaintiff's witnesses do not claim to have any exact or definite idea of the value thereof, but from their knowledge and acquaintance thereof gained by their connection therewith, they say it was worth between $5000 and $6000, one witness saying it was worth as much as $7200. Defendant says it was not worth anything like this sum; that he made no inventory of it and doesn't know its value, but it was the "tailings" of two old stocks and had run down; that he collected $100 on the Trujillo note and $90 on the Cooper notes he got from the Company; that the Company was in bad shape when he went in as Manager having out on its books a sum greater than the capital stock; that he didn't consider his stock in the Company as of any value but turned it in and learned afterwards that it was cancelled.

He says he resigned as manager and director before the contract was signed, the resignation, however, was not to take effect if the contract should for any reason fall through.

At the end of nineteen months, or in October, 1913, after the taking over of the dry goods stock, a fire consumed defendant's store and he got $2700 in insurance therefrom and sold the salvage for $1500, and, after paying debts owed on the stock, had $1900 left, besides getting $50 a month living expenses out of the business during the time he ran it.

From and after the fire, the defendant continued to reside in Durango, Colorado, until March 28, 1914, when he removed to Missouri. During all of this time nothing was ever said or done by the Corporation or its officers or stockholders in objection or opposition to what had been done although they all were fully cognizant of everything that was done; and up to the time of the fire defendant was in business on one of the principal streets of Durango, only a short distance away from the business house of the Corporation.

On June 10, 1915, the Durango Mercantile Company made an assignment to the plaintiff herein for the benefit of its creditors, all of whom became creditors subsequent to the sale of the dry goods stock hereinabove mentioned.

On March 3, 1916, a little less than five years after the transaction complained of had occurred, the Assignee brought suit in the Circuit Court of Jackson County, Missouri, to recover a balance of $3350 due on "certain negotiable notes, goods, wares, merchandise, furniture and fixtures of the value of $5883.58, for which the said defendant paid the sum of $2533.58 and no more" alleged to have been sold by the Durango Mercantile Company to the defendant. On May 22, 1917, said cause was tried, and, upon a peremptory instruction being given for defendant, plaintiff took nothing by his suit and defendant was allowed to go hence without day.

On the 26th of January, 1918, nearly six years after. the transaction herein complained of was had, this action in equity was brought for the purpose hereinabove stated at the beginning of this opinion.

It may be conceded that the transaction herein complained of does involve the purchase of its own stock by the corporation, though the defendant contends that the stock, being of no value, was regarded as worthless and was merely thrown in to get rid of it, and that he paid, in good money, what the property was worth aside from the stock thrown in. And it may be also conceded that, as the Colorado statute (Sec. 996, Mills Ann. Stats. Col. 1912), forbids a corporation buying its own stock, the transaction was not merely voidable—one that could be ratified by the stockholders and the corporation—but was absolutely void, and hence no amount of ratification could galvanize it into life and force. [Denver Fire Ins. Co. v. McClelland, 9 Colo. 11, 21; United Securities Co. v. Ostenbery, 60 Colo. 249; State ex rel. v. Bankers Trust Co., 157 Mo. App. 557, 568; Coleman v. Tepel, 230 Fed. 63, 67; Central Trans. Co. v. Pullman's Palace Car Co., 139 U. S. 24.]

But without regard to this, and even if we disallow defendant's contention that through delay and laches in contesting the validity of the transaction whereby, through lapse of time and the loss of evidence, it is now impossible to do justice and grant the relief prayed (1 C. J. 628; 21 C. J. 236; Hemmick v. Standard Oil Co., 91 Fed. 332; Harrison v. Gibson, 23 Grat. (64 Va.) 212), still we are confronted by a formidable barrier raised by defendant's plea of the Statute of Limitations.

Section 4638, Mills Ann. Stats. of Colorado, 1912, provides that:

"Bills for relief on the ground of fraud, shall be filed within three years after the discovery by the aggrieved party, of the facts constituting such fraud, and not afterwards."

And section 4639 of said statutes provides that:

"Bills of relief, in case of the existence of a trust not cognizable by the courts of the common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall occur, and not after."

And our section 1324, Revised Statutes 1919, provides that:

"Whenever a cause of action has been fully barred by the laws of the State, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any courts of this State."

Under these statutes, the cause of action sued on herein would seem to be barred.

The fact that on March 28, 1914, defendant left the State of Colorado and came to Missouri cannot be relied upon to suspend the Colorado Statutes of Limitation, because it is nowhere shown, nor even claimed, that Colorado has a statute suspending the operation of the Statutes of Limitation during the defendant's absence from the State. The record shows that the common law was, and is, in force in that State, since Section 6992 of the Colorado Statutes provides that: "The common law of England so far as the same is applicable and of a general nature, and all acts and statutes of the British Parliament, made in aid of or to supply the defects of the common law prior to the fourth year of James the First . . . which are of a general nature, and not local to that Kingdom, shall be considered as of full force until repealed by legislative authority."

We, therefore, are not left free to presume that the law in the State of Colorado is the same as in our State, i. e.—that Colorado has a law similar to our statute, section 1326, Revised Statutes 1919, suspending limitation on account of absence from the State. We must accept the record which does not show such a suspending law and does show that the common law is in force in that State. Under the common law, as adopted by Colorado, there was no suspension of limitations because of the absence of the defendant. [Lillard v. Lierley, 200 Mo. App. 140, 145; 17 R. C. L. 834.]

Under our statute, section 1317, Revised Statutes 1919, the cause of action herein is barred in five years. For that section applies to a case of this kind. [Johnson v. United Railways, 243 Mo. 278; Hudson v. Calhoun, 193 Mo. 547, 562; Priest v. Capitain, 197 S. W. 83, 87; Landes v. Sexton, 105 Mo. 486, 490.] Plaintiff cannot invoke the provisions of our statute, section 1326, Revised Statutes 1919, to suspend the running of limitation, because by its very terms that statute applies only to causes of action accruing against persons who are residents of this State at the time of such accrual. It being a matter of purely statutory regulation, and defendant's case not falling within the provisions of the statute, no benefit can be derived to plaintiff from that statute. [Givens v. Rogers, 192 Mo. App. 319, 321.]

But it is urged that the suit brought on March 3, 1916 was (under the provisions of our statute, section 1329, Revised Statutes 1919, allowing another suit to be brought within a year after nonsuit), sufficient to prevent the bar of the statute since it was brought within the proper time. But it not only does not appear that the cause of action was the same in that as in this suit, but that it involved an absolutely different cause of action, namely to recover the value of certain goods on a *quantum meruit*. For the first suit to save the second one from the bar of the statute, the cause of action must be the same in both actions. [Meddis v. Wilson, 175 Mo. 126, 134.] In order that a former suit may operate to relieve the plaintiff from the bar of the statute as to a later one "it must involve the same subject-matter and require the same evidence to sustain it." [St. Charles, etc., Bank v. Thompson, 223 S. W. 734, 737.]

This is not a case wherein, during the time defendant was absent from the State of Colorado, no action could have been brought at all, either for want of parties capable of suing or because the law prohibited the bringing of an action. The power to bring suit was open at all times. Hence the point that, regardless of any statute, limitation was suspended, cannot be maintained. [Airy

v. Watertown, 130 U. S. 320, 325; Airy v. Swinford, 154 Mo. App. 584, 587.]

The trust, of which plaintiff seeks to make defendant a trustee *ex maleficio*, is an implied trust, not an express one. Hence, the point that the Statute of Limitations could not run in defendant's favor cannot be upheld. [Landis v. Saxton, 105 Mo. 486, 489; Johnson v. United Railways, 243 Mo. 278, 300.] The cases cited by appellant in support of the contention on this point, namely, Elliott v. Landis Machine Co., 236 Mo. 546 and Case v. Goodman, 250 Mo. 112, 114, were in reference to express trusts.

The judgment of the Chancellor is affirmed. All concur.